**IN THE UNITED STATES DISTRICT COURT
FOR THE NOTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | |
|---|---|
| YAZAN HUSSEIN, individually and on behalf of all others similarly situated,<br><br>     *Plaintiff,*<br><br>*v.*<br><br>COINABUL, LLC, a Wyoming limited liability company, and JASON SHORE, an individual,<br><br>     *Defendants.* | Case No. 1:14-cv-05735 |

**PLAINTIFF'S MOTION FOR AND MEMORANDUM
IN SUPPORT OF CLASS CERTIFICATION**

Plaintiff Yazan Hussein, by and through his undersigned counsel, hereby respectfully

moves the Court for an Order certifying this case as a class action pursuant to Federal Rules of

Civil Procedure 23(a), (b)(2), and (b)(3), but requests that the Court enter and continue the

motion until after the completion of discovery on class-wide issues, at which time Plaintiff will

submit a more detailed memorandum of points and authorities in support of class certification.[1]

## I. INTRODUCTION

Defendants run an online marketplace called "Coinabul" where consumers may exchange

"bitcoins"—a new form of digital currency—for physical denominations of silver or gold. (*See*

---

[1] Plaintiff files this motion at the outset of litigation to prevent Defendants Coinabul, LLC and Jason Shore from attempting a so-called "buy off" to moot his representative claims (*i.e.*, tendering to him the full amount of his individual damages alleged in his Class Action Complaint and Demand for Jury Trial). *See* Dkt. 1; *see also Damasco v. Clearwire Corp.*, 662 F.3d 891, 896 (7th Cir. 2011) ("Class-action plaintiffs can move to certify the class at the same time that they file their complaint. The pendency of that motion protects a putative class from attempts to buy off the named plaintiffs . . . If the parties have yet to fully develop the facts needed for certification, then they can also ask the district court to delay its ruling to provide time for additional discovery or investigation.").

Plaintiff's Class Action Complaint and Demand for Jury Trial, Dkt. 1 ["Compl."] at ¶ 1.) In an attempt to market the service, Coinabul uniformly represented to Plaintiff and the Class that it's the "only Bitcoin to Gold resource [they] should deal with" because it "spent months developing the legal foundation, financial backing, corporate status, and significant software development to make a system that works. (*Id*. ¶ 13.) To that end, Coinabul encouraged potential customers to use its service to exchange their bitcoins to gold so that they could "stor[e their] savings in tangible, financially secure, metals instead of fickle digital [*i.e.*, Bitcoin] or paper options." (*Id*.) Unfortunately for their customers, Defendants failed to live up to their promises. (*Id*. ¶ 4.)

Starting in early or mid 2013, Defendants—without warning—began to stop shipping gold and silver to their customers even though they were still accepting their customers' bitcoins. (*Id*. ¶ 18.) Plaintiff is one such consumer who provided bitcoins to Coinabul in exchange for gold and who didn't receive any metal in return. (*Id*. ¶¶ 23-39.) In light of Defendants' conduct, Plaintiff filed the instant lawsuit and now respectfully moves the Court for an Order certifying this case as a class action pursuant to Federal Rule of Civil Procedure 23. Plaintiff's claims are readily certifiable because thousands of consumers (like Plaintiff) were likely subjected to Defendants' misleading representations about their service. As a result, every member of the proposed Class provided Defendants with their bitcoins and suffered injury in a nearly identical manner (*i.e.*, damages in the form of the bitcoins wrongfully held by Defendants).

For these reasons, and as discussed further below, the proposed Class in this case meets each of prerequisites for class certification under Federal Rules of Civil Procedure 23(a), (b)(2), and (b)(3), and the instant motion may be granted in its entirety. Notwithstanding, Plaintiff respectfully requests that the Court enter and reserve ruling on the motion until after the completion of discovery on class wide issues, at which time Plaintiff will submit a

comprehensive memorandum of points and authorities in support of class certification.

## II.    FACTUAL BACKGROUND

### A.    Facts Applicable to All Members of the Putative Class

Introduced in early 2009, Bitcoin has quickly become a recognized form of digital currency. (Compl. ¶ 11.) Just like traditional currency (*e.g.*, Dollars, Euros, etc.), bitcoins can be used to acquire good and services from any merchant that accepts them, or they can be traded for cash through a variety of private online exchanges. (*Id.* ¶ 12.) However, that's where the similarities end. (*Id.*) For instance, with traditional currency, a government decides when to produce and distribute it. Bitcoin, on the other hand, is not issued or directly regulated by any central authority or government. (*Id.*) Instead, bitcoins are created by individuals through a complex computer program and then traded with other individuals via the Internet (typically, through private online exchanges). (*Id.*)

Defendants claim to have started the "first Bitcoin to Gold resource available to the Bitcoin marketplace"—where individuals can purportedly exchange their bitcoins for real gold or silver. (*Id.* ¶ 13.) To trade bitcoins for gold or silver using Defendants' service, a consumer must visit their website (www.coinabul.com), search for specific coins or bars (such as American Gold Eagle coins and South African Gold Krugerrands), and then add the same to their "cart." (*Id.* ¶ 14.)

When the individual is ready to complete their order, they are directed to a page where they are presented with the total amount of bitcoins required to effectuate the exchange and are then instructed to transfer their bitcoins to Defendants' wallet.[2] (*Id.* ¶ 15.) Once the necessary number of bitcoins are transferred to their wallet, Defendants promise that customers can expect

---

[2]    A "Bitcoin wallet" refers to a digital database that can be used to store an individual's bitcoins.

to receive the products they have ordered within four to seventeen business days. (*Id.* ¶ 16.)

Starting around in early or mid 2013, Defendants—without warning—began to stop shipping gold and silver to their customers. (*Id.* ¶ 18.) Unfortunately, despite the fact that Defendants *continued to accept Bitcoin* from customers in exchange for gold or silver, Defendants ultimately stopped shipping metals to their customers as promised and refused to return customers' bitcoins. (*Id.* ¶ 22.)

### B.    Facts Applicable to Plaintiff Hussein

Plaintiff Hussein is one of many consumers who transferred bitcoins to Defendants and who did not receive any gold or silver in return. (Compl. ¶ 29.) In June 2013, Plaintiff placed three orders with Coinabul for gold coins and bars, and as payment, he transferred 1,644.54 bitcoins to Defendants. (*Id.* ¶ 25.) The orders never shipped. (*Id.* ¶ 28.) Over the past year, Plaintiff has repeatedly contacted Defendants to inquire about the status of his orders and repeatedly demanded the return of his bitcoins if the orders weren't going to ship. (*Id.* ¶¶ 25–29.) Unfortunately, Plaintiff never received the gold that he ordered nor did he receive the requested return of the 1,644.54 bitcoins that he transferred to Defendants nearly one year ago. (*Id.* ¶ 29.)

### C.    The Proposed Class

As a result of Defendants' conduct described above, Plaintiff brought this lawsuit and now seeks certification of a Class, defined as follows:

> All persons in the United States who (1) placed an order for products on Coinabul's website; (2) transferred bitcoins to Defendants in exchange for those products; (3) did not receive the ordered products; and (4) were not refunded their transferred bitcoins.[3]

---

[3]    Excluded from the Class are (1) Defendants, Defendants' agents, subsidiaries, parents, successors, predecessors, and any entity in which the Defendants or their parents have a controlling interest and their current and former employees, officers, and directors, (2) the Judge or Magistrate Judge to whom this case is assigned and the Judge's or Magistrate Judge's immediate family, (3) persons who execute and file a timely request for exclusion, (4) all persons who have previously had claims similar to those alleged herein finally adjudicated or who have

(Compl. ¶ 30.) As demonstrated below, the proposed Class meets each of the prerequisites for certification under Rule 23, and therefore the instant motion should be granted in its entirety.

## III. THE PROPOSED CLASS SATISFIES EACH OF THE PREREQUISITES FOR CERTIFICATION

Class certification is appropriate under Rule 23 when the proponent of certification demonstrates that each of the requirements of Rule 23(a) and at least one of the subsections under Rule 23(b) has been satisfied. Fed. R. Civ. P. 23. Rule 23(a) requires that (i) the proposed class is so numerous that joinder of all individual class members is impracticable (numerosity); (ii) that there are common questions of law and fact amongst class members (commonality); (iii) that the proposed representative's claims are typical of those of the class (typicality); and (iv) that both the named-representative and his or his counsel have and will continue to adequately represent the interests of the class (adequacy). Fed. R. Civ. P. 23(a).

In this case, Plaintiff seeks certification of the proposed Class under both Rule 23(b)(2) and 23(b)(3). In order to certify a class under Rule 23(b)(2), a plaintiff must show that the party opposing certification has acted or failed to act on grounds generally applicable to the class as a whole, "so that final injunctive relief or corresponding declaratory relief is appropriate . . . ." Fed. R. Civ. P. 23(b)(2). Similarly, in order to certify a class under Rule 23(b)(3), there must be questions of law or fact common to the proposed class members, which predominate over any questions affecting only individual members, and the class mechanism must be superior to other available methods for fairly and efficiently adjudicating the controversy. Fed. R. Civ. P. 23(b)(3).

In determining whether to certify a proposed class, a court does not inquire into the

---

released their claims against Defendants, and (5) the legal representatives, successors, or assigns of any such excluded person.

merits of the plaintiff's claims. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177 (1974). As

such, "for purposes of considering a motion for class certification, the substantive allegations of

the complaint are generally assumed to be true and it is also assumed that cognizable claims are

stated." *Anderson v. Cornejo*, 199 F.R.D. 228, 237 (N.D. Ill. 2000). Thus, courts are required to

analyze the allegations of the complaint and any evidence submitted by the parties, with a

presumption in favor of certification. *Id.*

      As explained further below, the proposed Class in this case meets all of the requirements

of Rules 23(a), (b)(2), and (b)(3), and therefore, can be properly certified.

### A. The Numerosity Requirement is Satisfied

      Rule 23(a)'s first requirement—numerosity—is satisfied where "the class is so numerous

that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1). To satisfy this requirement

there is no specific number required, nor are the plaintiffs required to state the exact number of

potential class members. *Smith v. Nike Retail Servs., Inc.*, 234 F.R.D. 648, 659 (N.D. Ill. 2006).

Generally, "[t]he court is permitted to make common-sense assumptions that support a finding of

numerosity." *Maxwell v. Arrow Fin. Servs., LLC*, No. 03-cv-1995, 2004 WL 719278, at *2 (N.D.

Ill. 2004); *see also* 3 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* ¶ 7.20,

66 (4th ed. 2001).

      Here, Plaintiff alleges—and discovery will show—that thousands of consumers used

Coinabul to trade bitcoins for metals and were never provided with their gold or silver as

promised. (Compl. ¶ 31); *see Heastie v. Community Bank of Greater* Peoria, 125 F.R.D. 669

(N.D. Ill. 1989) (classes numbering in the thousands "clearly" satisfy the numerosity

requirement); Alba Conte & Herbert Newberg, *Newberg on Class Actions* § 3:5, 243-46 (4th

ed. 2002) ("Class actions under the amended Rule 23 have frequently involved classes

numbering in the hundreds, or thousands . . . In such cases, the impracticability of bringing all

class members before the court has been obvious, and the Rule 23(a)(1) requirement has been

easily met."). Accordingly, the proposed Class satisfies the numerosity requirement.[4]

> **B.** **The Commonality Requirement is Satisfied**

Next, Rule 23(a) requires that "there are questions of law or fact common to the class."

Fed. R. Civ. P. 23(a)(2). To meet this commonality requirement, the representative plaintiff is

required to demonstrate that the proposed class members "have suffered the same injury." *Wal-*

*Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) (quoting *Gen. Tel. Co. of Sw. v. Falcon*,

457 U.S. 147, 157 (1982)). In other words, commonality requires that the claims of the class

"depend upon a common contention . . . of such a nature that it is capable of classwide

resolution—which means that determination of its truth or falsity will resolve an issue that is

central to the validity of each one of the claims in one stroke." *Id.* Commonality is present where

a "common nucleus of operative fact" exists, even if as to one question of law or fact, *Rosario v.*

*Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992), and is often found where "defendants have

engaged in standardized conduct toward members of the proposed class." *Whitten v. ARS Nat'l*

*Servs. Inc.*, No. 00-cv-6080, 2001 WL 1143238, at *3 (N.D. Ill. Sept. 27, 2001) (internal

quotations omitted). Ultimately, the question of commonality is a relatively low and easily

surmountable hurdle. *Scholes v. Stone, McGure, & Benjamin*, 143 F.R.D. 181, 185 (N.D. Ill.

1992).

In this case, all members of the proposed Class share common questions of both law and

fact. The factual questions include: (1) whether Defendants accepted their customers' bitcoins in

---

[4]     Of course, to the extent the Court requires additional details regarding the number of
members in the Class, such information may be readily obtained through discovery and
specifically, Defendants' records.

exchange for precious metals that they neither shipped nor intended to ship; and (2) whether Defendants should retain the bitcoins provided to them by Plaintiff and the putative Class. These factual questions lead to common legal questions, including: (1) whether Defendants' conduct constitutes consumer fraud; (2) whether agreements between Plaintiff and Class members on the one hand, and Defendants on the other hand, should be rescinded; (3) whether Defendants were unjustly enriched; and (4) whether Defendants' conduct constitutes a breach of contract. (Compl. ¶ 33.)

Accordingly, the commonality requirement is met.

## C.    Plaintiff's Claims are Typical of the Class

Typicality, the next requirement under Rule 23, requires that Plaintiff's claims be typical of those of the other Class members. Fed. R. Civ. P. 23(a)(3). The typicality requirement is closely related to the commonality requirement and is satisfied if Plaintiff's claims arise from "the same event or practice or course of conduct that gives rise to the claims of other class members and…are based on the same legal theory." *Radmanovich v. Combined Ins. Co. of Am.*, 216 F.R.D. 424, 432 (N.D. Ill. 2003) (internal quotations omitted). Nevertheless, the existence of factual differences will not preclude a finding of typicality; the claims of a named plaintiff need only share "the same essential characteristics" as those of the class. *Id.* Indeed, "[s]imilarity of legal theory is more important than factual similarity. . . ." *Id.* (quoting *Harris v. City of Chi.*, Nos. 96-cv-2406, 96-cv-7526, 1998 WL 59873, at *5 (N.D. Ill. Feb. 9, 1998)).

In this case, Plaintiff and the proposed Class members were each subject to Defendants' common course of conduct. That is, they each transferred bitcoins to Defendants in exchange for precious metals that they did not receive. (Compl. ¶¶ 22, 29, 33.) Further, they each placed their orders on Defendants' website, and they were therefore similarly affected by the false

representations that Defendants made there. (*Id*. ¶¶ 13-17.) As a result of Defendants' conduct,

Plaintiff and the other members of the Class were damaged in nearly identical manner: namely,

in the form of the bitcoins that Defendants collected from them and then unlawfully converted.

As such, by pursuing his own claims, Plaintiff will necessarily advance the interests of the

proposed Class in satisfaction of Rule 23(a)(3)'s typicality requirement.

### D.     The Adequacy of Representation Requirement is Satisfied

Finally, Rule 23(a) requires that the representative parties have and will continue to

"fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This factor

requires that both a proposed class representative and his or her counsel have the ability to

"zealously represent and advocate on behalf of the class as a whole." *Maxwell*, 2004 WL

719278, at *5. The proposed class representative must not have claims that are "antagonistic or

conflicting…with other members of the class," and must have a "sufficient interest in the

outcome of the case to ensure vigorous advocacy." *Id.* (internal quotations omitted).

Additionally, proposed class counsel must be competent and have the resources necessary to

sustain the complex litigation necessitated by class claims; it is persuasive evidence that

proposed class counsel have been found adequate in prior cases. *Gomez v. Ill. State Bd. of Educ.*,

117 F.R.D. 394, 401 (N.D. Ill. 1987).

In this case, Plaintiff has the same interests as the proposed Class—recovering the

bitcoins that Defendants accepted in exchange for precious metals that Defendants never

shipped. (Compl. ¶ 34.) Plaintiff has no interests antagonistic to those of the Class and therefore,

will fairly and adequately protect the interests of the Class, and his pursuit of the instant action

demonstrates as much. (*Id*.)

Similarly, proposed class counsel are well-respected members of the legal community

who have extensive experience in class actions of similar size, scope, and complexity to the instant action. (*See* Declaration of Benjamin S. Thomassen ["Thomassen Decl."] attached as Exhibit 1 at ¶ 3; *see also* Firm Resume of Edelson PC, attached to the Thomassen Decl. as Exhibit 1-A.) Proposed class counsel have regularly engaged in major complex litigation involving consumer technology issues and Bitcoin-related litigation, have the resources necessary to conduct litigation of this nature, and have frequently been appointed lead class counsel by courts throughout the country. (Thomassen Decl. ¶ 3); *see also Greene, et al. v. MtGox Inc., et al.*, No. 14-cv-01437 (N.D. Ill.). To date, proposed class counsel have also diligently investigated and dedicated substantial resources to the claims in this action, and they will continue to do so throughout its pendency. (*Id.* ¶ 4.)

As such, Plaintiff and his counsel have and will continue to adequately represent the Class, and Rule 23's adequacy requirement is met as well.

### E. The Proposed Class Meets the Requirements of Rule 23(b)(2)

Once the prerequisites of Rule 23(a) are satisfied, one of the three subsections of Rule 23(b) must be satisfied as well. Here, Plaintiff seeks certification of the proposed Class under Rules 23(b)(2) and (b)(3).

Rule 23(b)(2) provides that the party opposing certification must have acted or failed to act on grounds generally applicable to the proposed class, "so that final injunctive relief or corresponding declaratory relief is appropriate. . . ." *Brown v. Yellow Transp., Inc.*, No. 08-cv-5908, 2011 WL 1838741, at *2 (N.D. Ill. 2011) (quoting Fed. R. Civ. P. 23(b)(2)). The requirement that the defendant act on grounds generally applicable to the 23(b)(2) class, like the whole of Rule 23, is to be "liberally construed so as to favor the maintenance of class actions where appropriate." *Yellow Transp.*, 2011 WL 1838741, at *2 (citing *In re Evanston Nw.*

*Healthcare Corp. Antitrust Litig.*, 268 F.R.D. 56, 60 (N.D. Ill. 2010)); *see also King v. Kansas City S. Indus.*, 519 F.2d 20, 26 (7th Cir. 1975)). Where a court finds that Rule 23(a)'s commonality requirement is met, the court should typically also find that the plaintiff has shown that the defendant acted on grounds generally applicable to the class as a whole. *See Lemon v. Intl. Union of Operating Eng'rs*, *Loc. No. 139, AFL-CIO*, 216 F.3d 577, 580 (7th Cir. 2000); *Yellow Transp.*, 2011 WL 183871, at *7.

Here, Defendants operated on grounds generally applicable to the Class as a whole. That is, Defendants represented to each member of the putative Class that they could safely and securely trade their bitcoins for gold or silver. (Compl. ¶ 13.) As such, Defendants entered into virtually identical agreements with Plaintiff and the proposed Class members in which Class members agreed to transfer bitcoins to Defendants and Defendants agreed to ship precious metals in return. (*Id*. ¶¶ 15-17.) Unfortunately, Defendants did not deliver on their promises, and instead of shipping gold or silver to Plaintiff and the putative Class, they wrongfully converted Plaintiff's and the putative Class members' bitcoins. (*Id.*) Defendants' conduct did not vary significantly from Class member to Class member and therefore, final injunctive relief is necessary to protect Plaintiff and the Class from such unlawful conduct in the future.

The requirements of Rule 23(b)(2) are satisfied.

### F.     The Proposed Class Also Meets the Requirements of Rule 23(b)(3)

Plaintiff also seeks certification of the Class under Rule 23(b)(3), which provides that a class action may be maintained where the questions of law and fact common to members of the class predominate over any questions affecting only individual members, and the class action mechanism is superior to other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3); *Fletcher v. ZLB Behring LLC*, 245 F.R.D. 328, 331–32

(N.D. Ill. 2006). As discussed below, this case readily meets both of these requirements.

          i.      Common Questions of Law and Fact Predominate

Rule 23(b)(3)'s "predominance requirement looks to whether the proposed class is 'sufficiently cohesive' to warrant 'adjudication' by representation." *Williams-Green v. J. Alexander's Rests., Inc.*, 277 F.R.D. 374, 383 (N.D. Ill. 2011) (citing *Wal-Mart*, 131 S. Ct. at 2566). The inquiry requires courts to identify 'the substantive issues that will control the outcome, assess[] which issues will predominate, and then determine whether the issues are common to the class." *Id.* (citing *Hyderi v. Wash. Mut. Bank, FA*, 235 F.R.D. 390, 398 (N.D. Ill. 2006)) (internal quotations omitted).

Here, the claims of Plaintiff and the other members of the putative Class all arise from Defendants' uniform advertising and operating of its "Bitcoin-to-Gold" exchange, which resulted in Defendants' collection of Plaintiff's and the putative Class members' bitcoins and subsequent wrongful withholding of the same. (Compl. ¶¶ 18-22, 32.) As such, the common questions described in Section III.B, *supra*, predominate over any issues affecting only individual Class members (*e.g.*, the total number of bitcoins transferred by each individual Class member).

Moreover, the answers to these questions are necessarily subject to common proof, primarily from information to be found within Defendants' own records. *See Wal-Mart*, 131 S. Ct. at 2551 (2011) ("What matters to class certification . . . is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation."); *Schmidt v. Smith & Wollensky, LLC*, 268 F.R.D. 323, 329 (N.D. Ill. 2010) (holding that the court must determine "whether plaintiffs can, through individualized cases, offer proof on a class-wide basis."). Defendants operated their "Bitcoin-to-Gold" exchange such that it was incapable of providing all of the

services advertised, and further, they failed to ship customers' orders and, thus, unlawfully withheld their customers' bitcoins. As a result, the information necessary to prove Plaintiff's and the Class's claims—*e.g.*, internal communications, policies, and procedures regarding the operating of Coinabul's exchange—will come from within Defendants' own records.[5]

For all of these reasons, Rule 23(b)(3)'s predominance requirement is also satisfied.

ii.     <u>The Class Action Mechanism is Superior to Other Available Methods for the Litigation of this Matter</u>

Finally, Rule 23(b)(3) further requires that the class action mechanism be superior to the other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P 23(b)(3); *Fletcher*, 245 F.R.D. at 334. The instant class action is superior to other available methods for the fair and efficient adjudication of Plaintiff's and the Class's claims.

Absent class treatment in this case, each individual member of the Class would be required to present the same or essentially the same legal and factual arguments, in separate and duplicative proceedings, the result of which would be a multiplicity of trials conducted at enormous expense to both the judicial system and the litigants. Such a result would be neither efficient nor fair to anyone, including Defendants. Moreover, there is no indication that members of the Class have a strong interest in individual litigation, let alone any incentive to pursue their claims individually, given the small amount of damages likely to be recovered relative to the resources required to prosecute such an action. Furthermore, class certification will promote consistency of rulings and judgments, giving all parties the benefit of finality.

Accordingly, the superiority requirement is satisfied as well.

---

[5]     Additionally, records of each member of the putative Class will be within Defendants' possession and control.

## IV.    CONCLUSION

For the reasons stated above, and which will be borne out by discovery, this case is appropriate for class certification. Accordingly, Plaintiff Yazan Hussein, individually and on behalf of the proposed Class, respectfully requests that the Court: (1) enter and reserve ruling on his motion for class certification; (2) allow for and schedule discovery to take place on class-wide issues; (3) grant him leave to file an amended motion upon the conclusion of discovery relating to certification issues; (4) grant his motion for class certification after full briefing; and (5) provide all other and further relief that the Court deems reasonable and just.[6]

Respectfully submitted,

**YAZAN HUSSEIN**, individually and on behalf of all others similarly situated,

Dated: July 25, 2014

By: /s/ Benjamin S. Thomassen
    One of Plaintiff's Attorneys

Rafey S. Balabanian
rbalabanian@edelson.com
Benjamin S. Thomassen
bthomassen@edelson.com
Alicia E. Hwang
ahwang@edelson.com
David I. Mindell
dmindell@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

*Counsel for the Plaintiff and the Putative Class*

---

[6]    Plaintiff respectfully reserves the right to amend the definition of the proposed Class at the conclusion of class-wide discovery, subject to Court approval.

# EXHIBIT 1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| YAZAN HUSSEIN, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>*v.*<br><br>COINABUL, LLC, a Wyoming limited liability company, and JASON SHORE, an individual,<br><br>*Defendants*. | Case No. 1:14-cv-05735 |

## <u>DECLARATION OF BENJAMIN S. THOMASSEN</u>

Pursuant to 28 U.S.C. § 1746, I, Benjamin S. Thomassen, hereby declare as follows:

1.      I am an attorney at the law firm of Edelson PC, which has been retained to represent Plaintiff Yazan Hussein in this matter. I am an adult over the age of eighteen and I am fully competent to make this declaration. I have personal knowledge of all matters set forth herein unless otherwise indicated. If called to testify as to the matters stated herein, I could and would competently do so. I make this declaration in support of Plaintiff's Motion for Class Certification.

2.      Attached as Exhibit 1-A is a true and accurate copy of the Firm Resume of Edelson PC ("Firm Resume").

3.      As shown in the Firm Resume, my firm has regularly engaged in major complex litigation, and has extensive experience in class actions of similar size, scope, and complexity to the instant action. Moreover, my firm has regularly engaged in major complex litigation involving consumer technology issues and Bitcoin-related actions, has the resources necessary to

1

conduct litigation of this nature, and have frequently been appointed lead class counsel by courts throughout the country.

4.      To date, my firm has already diligently investigated and dedicated substantial resources to the investigation of the claims at issue in this action, and will continue to do so throughout its pendency.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 25th day of July 2014 at Chicago, Illinois.


/s/ Benjamin S. Thomassen

# EXHIBIT 1-A

# EDELSON PC FIRM RESUME

EDELSON PC is a plaintiff's class action and commercial litigation firm with attorneys in Illinois, Colorado, and California.

Our attorneys have been recognized as leaders in these fields by state and federal legislatures, national and international media groups, the courts, and our peers. Our reputation for leadership in class action litigation has led state and federal courts to appoint us lead counsel in many high-profile class actions, including privacy suits against comScore, Netflix, Time, Microsoft, and Facebook; numerous Telephone Consumer Protection Act ("TCPA") cases against companies such as Google, Twentieth Century Fox, and Simon & Schuster; class actions against Citibank, Wells Fargo, and JP Morgan Chase related to reductions in home equity lines of credit; fraudulent marketing cases against software companies such as Symantec; mobile content class actions against all major cellular telephone carriers; the Thomas the Tank Engine lead paint class actions; and the tainted pet food litigation. We have testified before the United States Senate on class action issues and have repeatedly been asked to work on federal and state legislation involving cellular telephony, privacy, and other issues. Our attorneys have appeared on dozens of national and international television and radio programs to discuss our cases and class action and consumer protection issues more generally. Our attorneys speak regularly at seminars on consumer protection and class action issues, lecture on class actions at law schools, and are asked to serve as testifying experts in cases involving class action and consumer issues.

## PLAINTIFFS' CLASS AND MASS ACTION PRACTICE GROUP

EDELSON PC is a leader in plaintiffs' class and mass action litigation, with a particular emphasis on consumer technology class actions, and has been called a "class action 'super firm.'" (Decalogue Society of Lawyers, Spring 2010.) As recognized by federal courts nationwide, our firm has an "extensive histor[y] of experience in complex class action litigation, and [is a] well-respected law firm[] in the plaintiffs' class action bar." *In re Pet Food Prod. Liab. Litig.*, MDL Dkt. No. 1850, No. 07-2867 (NLH) (D.N.J. Nov. 18, 2008). A leading arbitrator concurred, finding that Edelson was "extraordinarily experienced" in "consumer protection class actions generally," including "technology consumer protection class action[s]."

In appointing our firm interim co-lead in one of the most high profile cases in the country, a federal court pointed to our ability to be "vigorous advocates, constructive problem-solvers, and civil with their adversaries." *In Re JPMorgan Chase Home Equity Line of Credit Litig.*, No. 10 C 3647 (N.D. Ill, July 16, 2010). After hard fought litigation, that case settled, resulting in the reinstatement of between $3.2 billion and $4.7 billion in home credit lines.

We have been specifically recognized as "pioneers in the electronic privacy class action field, having litigated some of the largest consumer class actions in the country on this issue." *In re Facebook Privacy Litig.*, No. C 10-02389, Dkt. 69 at 5 (N.D. Cal. Dec. 10, 2010) (order appointing the firm interim co-lead of privacy class action); *see also In re Netflix Privacy Litig.*, No. 11-cv-00379, Dkt. 59 at 5 (N.D. Cal. Aug. 12, 2011) (appointing us the sole lead counsel due, in part, to our "significant and particularly specialized expertise in electronic privacy litigation and class actions[.]").

Similarly, as recognized by a recent federal court, our firm has "pioneered the application of the TCPA to text-messaging technology, litigating some of the largest consumer class actions in the country on this issue." *Ellison v Steve Madden, Ltd.*, No. 11-cv-5935 PSG, Dkt. 73 at 9 (C.D. Cal. May 7, 2013).

We have several sub-specialties within our plaintiffs' class action practice:

# PRIVACY/DATA LOSS

### *Data Loss/Unauthorized Disclosure of Data*

We have litigated numerous class actions involving issues of first impression against Facebook, Apple, Netflix, Sony, Redbox, Pandora, Sears, Storm 8, Google, T-Mobile, Microsoft, and others involving failures to protect customers' private information, security breaches, and unauthorized sharing of personal information with third parties. Representative settlements and ongoing cases include:

- *Dunstan v. comScore, Inc.*, No. 11-cv-5807 (N.D. Ill.): Lead counsel in certified class action accusing internet analytics company of improper data collection practices. The court has preliminarily approved a $14 million settlement.

- *Resnick v. Avmed*, No. 10-cv-24513 (S.D. Fla.): Lead counsel in data breach case filed against health insurance company. Obtained landmark appellate decision endorsing common law unjust enrichment theory, irrespective of whether identity theft occurred. Case also resulted in the first class action settlement in the country to provide data breach victims with monetary payments irrespective of identity theft.

- *In re Netflix Privacy Litigation*, No. 11-cv-00379 (N.D. Cal.): Sole lead counsel in suit alleging that defendant violated the Video Privacy Protection Act by illegally retaining customer viewing information. Case resulted in a $9 million dollar *cy pres* settlement that has been finally approved (pending appeal).

- *Halaburda v. Bauer Publishing Co.*, No. 12-cv-12831 (E.D. Mich.); *Grenke v. Hearst Communications, Inc.*, No. 12-cv-14221 (E.D. Mich.); *Fox v. Time, Inc.*, No. 12-cv-14390 (E.D. Mich.): Consolidated actions brought under Michigan's Video Rental Privacy Act, alleging unlawful disclosure of subscribers' personal information. In a ground-breaking decision, the court denied three motions to dismiss finding that the magazine publishers were covered by the act and that the illegal sale of personal information triggers an automatic $5,000 award to each aggrieved consumer.

- *Standiford v. Palm*, No. 09-cv-05719-LHK (N.D. Cal.): Sole lead counsel in data loss class action, resulting in $640,000 settlement.

- *In re Zynga Privacy Litigation*, No. 10-cv-04680 (N.D. Cal.): Appointed co-lead counsel in suit against gaming application designer for the alleged unlawful disclosure of its users' personally identifiable information to advertisers and other third parties.

- *In re Facebook Privacy Litigation*, No. 10-cv-02389 (N.D. Cal.): Appointed co-lead counsel in suit alleging that Facebook unlawfully shared its users' sensitive personally identifiable information with Facebook's advertising partners.

- *In re Sidekick Litigation*, No. C 09-04854-JW (N.D. Cal.): Co-lead counsel in cloud computing data loss case against T-Mobile and Microsoft. Settlement provided the class with potential settlement benefits valued at over $12 million.

- *Desantis v. Sears*, No. 08 CH 00448 (Cir. Ct. Cook Cnty., Ill.): Lead counsel in injunctive settlement alleging national retailer allowed purchase information to be publicly available through the internet.

### Telephone Consumer Protection Act

Edelson has been at the forefront of TCPA litigation for over six years, having secured the groundbreaking *Satterfield* ruling in the Ninth Circuit applying the TCPA to text messages. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946 (9th Cir. 2009). In addition to numerous settlements totaling over $100 million in relief to consumers, we have over two dozen putative TCPA class actions pending against companies including Santander Consumer USA, Inc., Walgreen Co., Path, Inc., Nuance Communications, Inc., Stonebridge Life Insurance, Inc., GEICO, DirectBuy, Inc., and RCI, Inc. Representative settlements and ongoing cases include:

- *Rojas v CEC*, No. 10-cv-05260 (N.D. Ill.): Lead counsel in text spam class action that settled for $19,999,400.

- *In re Jiffy Lube Int'l Text Spam Litigation*, No. 11-md-2261, 2012 WL 762888 (S.D. Cal.): Co-lead counsel in $35 million text spam settlement.

- *Ellison v Steve Madden, Ltd.*, No. cv 11-5935 PSG (C.D. Cal.): Lead counsel in $10 million text spam settlement.

- *Kramer v. B2Mobile*, No. 0-cv-02722-CW (N.D. Cal.): Lead counsel in $12.2 million text spam settlement.

- *Pimental v. Google, Inc.*, No. 11-cv-02585 (N.D. Cal.): Lead counsel in class action alleging that defendant co-opted group text messaging lists to send unsolicited text messages. $6 million settlement provides class members with an unprecedented $500 recovery.

- *Robles v. Lucky Brand Dungarees, Inc.*, No. 10-cv-04846 (N.D. Cal.): Lead counsel in $10 million text spam settlement.

- *Miller v. Red Bull*, No. 12-CV-04961 (N.D. Ill.): Lead counsel in $6 million text spam settlement.

- *Woodman v. ADP Dealer Services*, No. 2013 CH 10169 (Cook County, IL): Lead counsel in $7.5 million text spam settlement.

- *Lozano v. 20th Century Fox*, No. 09-cv-05344 (N.D. Ill.): Lead counsel in class action alleging that defendants violated federal law by sending unsolicited text messages to cellular telephones of consumers. Case settled for $16 million.

- *Satterfield v. Simon & Schuster*, No. C 06 2893 CW (N.D. Cal.): Co-lead counsel in in $10 million text spam settlement.

- *Weinstein v. Airit2me, Inc.*, No. 06 C 0484 (N.D. Ill): Co-lead counsel in $7 million text spam settlement.

## CONSUMER TECHNOLOGY

### *Fraudulent Software*

In addition to the settlements listed below, EDELSON PC has consumer fraud cases pending in courts nationwide against companies such as McAfee, Inc., Avanquest North America Inc., PC Cleaner, AVG, iolo Technologies, LLC, among others. Representative settlements include:

- *Drymon v. Cyberdefender*, No. 11 CH 16779 (Cir. Ct. Cook Cnty., Ill.): Lead counsel in class action alleging that defendant deceptively designed and marketed its computer repair software. Case settled for $9.75 million.

- *Gross v. Symantec Corp.*, No. 12-cv-00154-CRB (N.D. Cal.): Lead counsel in class action alleging that defendant deceptively designed and marketed its computer repair software. Case settled for $11 million.

- *LaGarde v. Support.com, Inc.*, No. 12-cv-00609-JSC (N.D. Cal.): Lead counsel in class action alleging that defendant deceptively designed and marketed its computer repair software. Case settled for $8.59 million.

- *Ledet v. Ascentive LLC*, No. 11-CV-294-PBT (E.D. Pa.): Lead counsel in class action alleging that defendant deceptively designed and marketed its computer repair software. Case settled for $9.6 million.

- *Webb v. Cleverbridge, Inc.*, No. 1:11-cv-04141 (N.D. Ill.): Lead counsel in class action alleging that defendant deceptively designed and marketed its computer repair software. Case settled for $5.5 million.

### Video Games

EDELSON PC has litigated cases video-game related cases against Activision Blizzard Inc., Electronic Arts, Inc., Google, and Zenimax Media, Inc., and has active litigation pending, including:

- *Locke v. Sega of America*, No. 13-cv-01962-MEJ (N.D. Cal.): Pending putative class action alleging that Sega of America and Gearbox Software released video game trailer that falsely represented the actual content of the game.

## MORTGAGE & BANKING

EDELSON PC has been at the forefront of class action litigation arising in the aftermath of the federal bailouts of the banks. Our suits include claims that certain banks unlawfully suspended home credit lines based on pre-textual reasons, and that certain banks have failed to honor loan modification programs. We achieved the first federal appellate decision in the country recognizing the right of borrowers to enforce HAMP trial plans under state law. The court noted that "[p]rompt resolution of this matter is necessary not only for the good of the litigants but for the good of the Country." *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 586 (7th Cir. 2012) (Ripple, J., concurring). Our settlements have restored billions of dollars in home credit lines to people throughout the country. Representative cases and settlements include:

- *In re JP Morgan Chase Bank Home Equity Line of Credit Litigation*, No. 10-cv-3647 (N.D. Ill.): Court appointed interim co-lead counsel in nationwide putative class action alleging illegal suspensions of home credit lines. Settlement restored between $3.2 billion and $4.7 billion in credit to the class.

- *Hamilton v. Wells Fargo Bank, N.A.*, No. 09-cv-04152-CW (N.D. Cal.): Lead counsel in class actions challenging Wells Fargo's suspensions of home equity lines of credit. Nationwide settlement restores access to over $1 billion in credit and provides industry leading service enhancements and injunctive relief.

- *In re Citibank HELOC Reduction Litigation*, No. 09-cv-0350-MMC (N.D. Cal.): Lead counsel in class actions challenging Citibank's suspensions of home equity lines of credit. The settlement restored up to $653,920,000 worth of credit to affected borrowers.

- *Wigod v. Wells Fargo*, No. 10-cv-2348 (N.D. Ill.): In ongoing putative class action, obtained first appellate decision in the country recognizing the right of private litigants to sue to enforce HAMP trial plans.

## GENERAL CONSUMER PROTECTION CLASS ACTIONS

We have successfully prosecuted countless class actions against computer software companies, technology companies, health clubs, dating agencies, phone companies, debt collectors, and other businesses on behalf of consumers. In addition to the settlements listed below, EDELSON PC have litigated consumer fraud cases in courts nationwide against companies such as Motorola Mobility, Stonebridge Benefit Services, J.C. Penney, Sempris LLC, and Plimus, LLC. Representative settlements include:

### *Mobile Content*

We have prosecuted over 100 cases involving mobile content, settling numerous nationwide class actions, including against industry leader AT&T Mobility, collectively worth over a hundred million dollars.

- *McFerren v. AT&T Mobility, LLC*, No. 08-CV-151322 (Fulton Cnty. Super. Ct., Ga.): Lead counsel class action settlement involving 16 related cases against largest wireless service provider in the nation. "No cap" settlement provided virtually full refunds to a nationwide class of consumers who alleged that unauthorized charges for mobile content were placed on their cell phone bills.

- *Paluzzi v. Cellco Partnership*, No. 07 CH 37213 (Cir. Ct. Cook Cnty., Ill.): Lead counsel in class action settlement involving 27 related cases alleging unauthorized mobile content charges. Case settled for $36 million.

- *Gray v. Mobile Messenger Americas, Inc.*, No. 08-CV-61089 (S.D. Fla.): Lead counsel in case alleging unauthorized charges were placed on cell phone bills. Case settled for $12 million.

- *Parone v. m-Qube, Inc.*, No. 08 CH 15834 (Cir. Ct. Cook Cnty., Ill.): Lead counsel in class action settlement involving over 2 dozen cases alleging the imposition of unauthorized mobile content charges. Case settled for $12.254 million.

- *Williams v. Motricity, Inc.*, No. 09 CH 19089 (Cir. Ct. Cook Cnty., Ill.): Lead counsel in class action settlement involving 24 cases alleging the imposition of unauthorized mobile content charges. Case settled for $9 million.

- *VanDyke v. Media Breakaway, LLC*, No. 08 CV 22131 (S.D. Fla.): Lead counsel in class action settlement alleging unauthorized mobile content charges. Case settled for $7.6 million.

- *Gresham v. Cellco Partnership*, No. BC 387729 (L.A. Super. Ct., Cal.): Lead counsel in case alleging unauthorized charges were placed on cell phone bills. Settlement provided class members with full refunds.

- *Abrams v. Facebook, Inc.*, No. 07-05378 (N.D. Cal.): Lead counsel in injunctive settlement concerning the transmission of allegedly unauthorized mobile content.

### Deceptive Marketing

- *Van Tassell v. UMG*, No. 1:10-cv-2675 (N.D. Ill.): Lead counsel in negative option marketing class action. Case settled for $2.85 million.

- *McK Sales Inc. v. Discover Bank*, No. 10-cv-02964 (N.D. Ill.): Lead counsel in class action alleging deceptive marketing aimed at small businesses. Case settled for $6 million.

- *Farrell v. OpenTable*, No 11-cv-01785-si (N.D. Cal.): Lead counsel in gift certificate expiration case. Settlement netted class over $3 million in benefits.

- *Ducharme v. Lexington Law*, No. 10-cv-2763-crb (N.D. Cal): Lead counsel in CROA class action. Settlement resulted in over $6 million of benefits to the class.

- *Pulcini v. Bally Total Fitness Corp.*, No. 05 CH 10649 (Cir. Ct. Cook Cnty., Ill.): Co-lead counsel in four class action lawsuits brought against two health clubs and three debt collection companies. A global settlement provided the class with over $40 million in benefits, including cash payments, debt relief, and free health club services.

- *Kozubik v. Capital Fitness, Inc.*, 04 CH 627 (Cir. Ct. Cook Cnty., Ill.): Co-lead counsel in state-wide suit against a leading health club chain, which settled in 2004, providing the over 150,000 class members with between $11 million and $14 million in benefits, consisting of cash refunds, full debt relief, and months of free health club membership.

- *Kim v. Riscuity*, No. 06 C 01585 (N.D. Ill.): Co-lead counsel in suit against a debt collection company accused of attempting to collect on illegal contracts. The case settled in 2007, providing the class with full debt relief and return of all money collected.

- *Jones v. TrueLogic Financial Corp.*, No. 05 C 5937 (N.D. Ill.): Co-lead counsel in suit against two debt collectors accused of attempting to collect on illegal contracts. The case settled in 2007, providing the class with approximately $2 million in debt relief.

- *Fertelmeyster v. Match.com*, No. 02 CH 11534 (Cir. Ct. Cook Cnty., Ill.): Co-lead counsel in a state-wide class action suit brought under Illinois consumer protection statutes. The settlement provided the class with a collective award with a face value in excess of $3 million.

- *Cioe v. Yahoo!, Inc.*, No. 02 CH 21458 (Cir. Ct. Cook Cnty., Ill.): Co-lead counsel in a state-wide class action suit brought under state consumer protection statutes. The settlement provided the class with a collective award with a face value between $1.6 million and $4.8 million.

- *Zurakov v. Register.com,* No. 01-600703 (N.Y. Sup. Ct., N.Y. Cnty.): Co-lead counsel in a class action brought on behalf of an international class of over one million members against Register.com for its allegedly deceptive practices in advertising on "coming soon" pages of newly registered Internet domain names. Settlement required Register.com to fully disclose its practices and provided the class with relief valued in excess of $17 million.

## PRODUCTS LIABILITY CLASS ACTIONS

We have been appointed lead counsel in state and federal products liability class settlements, including a $30 million settlement resolving the "Thomas the Tank Engine" lead paint recall cases and a $32 million settlement involving the largest pet food recall in the history of the United States and Canada. Representative settlements include:

- *Barrett v. RC2 Corp.*, No. 07 CH 20924 (Cir. Ct. Cook Cnty., Ill.): Co-lead counsel in lead paint recall case involving Thomas the Tank toy trains. Settlement is valued at over $30 million and provided class with full cash refunds and reimbursement of certain costs related to blood testing.

- *In re Pet Food Products Liability Litigation*, No. 07-2867 (D.N.J.): Part of mediation team in class action involving largest pet food recall in United States history. Settlement provided $24 million common fund and $8 million in charge backs.

## INSURANCE CLASS ACTIONS

We have prosecuted and settled multi-million dollar suits against J.C. Penney Life Insurance for allegedly illegally denying life insurance benefits under an unenforceable policy exclusion and against a Wisconsin insurance company for terminating the health insurance policies of groups of self-insureds. Representative settlements include:

- *Holloway v. J.C. Penney*, No. 97 C 4555, (N.D. Ill.): One of the primary attorneys in a multi-state class action suit alleging that the defendant illegally denied life insurance benefits to the class. The case settled in or around December of 2000, resulting in a multi-million dollar cash award to the class.

- *Ramlow v. Family Health Plan* (Wisc. Cir. Ct., WI): Co-lead counsel in a class action suit challenging defendant's termination of health insurance to groups of self-insureds. The plaintiff won a temporary injunction, which was sustained on appeal, prohibiting such termination and eventually settled the case ensuring that each class member would remain insured.

## MASS/CLASS TORT CASES

Our attorneys were part of a team of lawyers representing a group of public housing residents in a suit based upon contamination related injuries, a group of employees exposed to second-hand smoke on a riverboat casino, and a class of individuals suing a hospital and national association of blood banks for failure to warn of risks related to blood transfusions. Representative settlements include:

- *Aaron v. Chicago Housing Authority*, No. 99 L 11738, (Cir. Ct. Cook Cnty., Ill.): Part of team representing a group of public housing residents bringing suit over contamination-related injuries. Case settled on a mass basis for over $10 million.

- *Januszewski v. Horseshoe Hammond*, No. 2:00CV352JM (N.D. Ind.): Part of team of attorneys in mass suit alleging that defendant riverboat casino caused injuries to its employees arising from exposure to second-hand smoke.

The firm's cases regularly receive attention from local, national, and international media. Our cases and attorneys have been reported in the Chicago Tribune, USA Today, the Wall Street Journal, the New York Times, the LA Times, by the Reuters and UPI news services, and BBC International. Our attorneys have appeared on numerous national television and radio programs, including ABC World News, CNN, Fox News, NPR, and CBS Radio, as well as television and radio programs outside of the United States. We have also been called upon to give congressional testimony and other assistance in hearings involving our cases.

## GENERAL COMMERCIAL LITIGATION

Our attorneys have handled a wide range of general commercial litigation matters, from partnership and business-to-business disputes, to litigation involving corporate takeovers. We have handled cases involving tens of thousands of dollars to "bet the company" cases involving up to hundreds of millions of dollars. Our attorneys have collectively tried hundreds of cases, as well as scores of arbitrations and mediations.

## OUR ATTORNEYS

**JAY EDELSON** is the founder and Managing Partner of EDELSON PC. He has been recognized as a leader in class actions, technology law, corporate compliance issues, and consumer advocacy by his peers, the media, state and federal legislators, academia, and courts throughout the country.

Jay has been appointed lead counsel in numerous state, federal, and international class actions, resulting in hundreds of millions of dollars for his clients. He is regularly asked to weigh in on federal and state legislation involving his cases. He testified to the U.S. Senate about the largest pet food recall in the country's history and is advising state and federal politicians on consumer issues relating to the recent federal bailouts, as well as technology issues, such as those involving mobile marketing. Jay also counsels companies on legal compliance and legislative issues in addition to handling all types of complex commercial litigation.

Jay has litigated class actions that have established precedent concerning the ownership rights of domain name registrants, the applicability of consumer protection statutes to Internet businesses, and the interpretation of numerous other state and federal statutes including the Telephone Consumer Protection Act and the Video Privacy Protection Act. As lead counsel, he has also secured settlement in cases of first impression involving Facebook, Microsoft, AT&T, and countless others, collectively worth hundreds of millions of dollars.

In addition to technology based litigation, Jay has been involved in a number of high-profile "mass tort" class actions and product recall cases, including cases against Menu Foods for selling contaminated pet food, a $30 million class action settlement involving the Thomas the Tank Engine toy train recall, and suits involving damages arising from second-hand smoke.

In 2009, Jay was named one of the top 40 Illinois attorneys under 40 by the Chicago Daily Law Bulletin. In giving Jay that award, he was heralded for his history of bringing and winning landmark cases and for his "reputation for integrity" in the "rough and tumble class action arena." In the same award, he was called "one of the best in the country" when it "comes to legal strategy and execution." Also in 2009, Jay was included in the American Bar Association's "24 hours of Legal Rebels" program, where he was dubbed one of "the most creative minds in the legal profession" for his views of associate training and firm management. In 2010, he was presented with the Annual Humanitarian Award in recognition of his "personal integrity, professional achievements, and charitable contributions" by the Hope Presbyterian Church. Starting in 2011, he has been selected as an Illinois Super Lawyer and, separately, as a top Illinois class action lawyer by Benchmark Plaintiff.

Jay is frequently asked to participate in legal seminars and discussions regarding the cases he is prosecuting, including serving as panelist on national symposium on tort reform and, separately, serving as a panelist on litigating high-profile cases. He has also appeared on dozens of television and radio programs to discuss his cases. He has taught classes on class action law at Northwestern Law School and The John Marshall Law School, and has co-chaired a 2-day national symposium on class action issues. He has been an adjunct professor, teaching a seminar on class action litigation at Chicago-Kent College of Law since 2010.

Jay is a graduate of Brandeis University and the University of Michigan Law School.

**RYAN D. ANDREWS** is a Partner at EDELSON PC, and the Chair of the Telecommunications Practice Group. Ryan has been appointed class counsel in numerous state and federal class actions nationwide that have resulted in nearly $100 million dollars in refunds to consumers, including *Satterfield v. Simon & Schuster, Inc.*, No. C 06 2893 CW (N.D. Cal.); *Gray v. Mobile Messenger Americas, Inc.*, No. 08-CV-61089 (S.D. Fla.); *Lofton v. Bank of America Corp.*, No. 07-5892 (N.D. Cal.); *Paluzzi v. Cellco Partnership*, No. 07 CH 37213 (Cir. Ct. Cook Cnty., Ill.), *Parone v. m-Qube, Inc.* No. 08 CH 15834 (Cook County, Ill.); and *Kramer v. Autobytel*, Inc., No. 10-cv-2722 (N.D. Cal. 2010).

In addition, Ryan has achieved groundbreaking court decisions protecting consumers through the application of the Telephone Consumer Protection Act to emerging text-messaging technology. Representative reported decisions include: *Lozano v. Twentieth Century Fox*, 702 F. Supp. 2d 999 (N.D. Ill. 2010); *Satterfield v. Simon & Schuster, Inc.* 569 F.3d 946 (9th Cir. 2009); *Kramer v. Autobytel, Inc.*, 759 F. Supp. 2d 1165 (N.D. Cal. 2010); *In re Jiffy Lube Int'l Text Spam Litig*, No. 11-md-2261, 2012 WL 762888 (S.D. Cal. March 9, 2012).

Ryan received his J.D. with High Honors from the Chicago-Kent College of Law and was named Order of the Coif. Recently, Ryan has returned to Chicago-Kent as an Adjunct Professor of Law, teaching a third-year seminar on Class Actions. While in law school, Ryan was a Notes & Comments Editor for The Chicago-Kent Law Review, as well as a teaching assistant for both Property Law and Legal Writing courses. Ryan externed for the Honorable Joan B. Gottschall in the United States District Court for the Northern District of Illinois.

A native of the Detroit area, Ryan graduated from the University of Michigan, earning his B.A., with distinction, in Political Science and Communications.

Ryan is licensed to practice in Illinois state courts, the United States District Court for the Northern District of Illinois, the U.S. Court of Appeals for the Seventh Circuit, and the U.S. Court of Appeals for the Ninth Circuit.

**RAFEY S. BALABANIAN** is a Partner and the Chair of the Corporate Governance and Business Litigation Practice Group. Rafey's practice focuses upon a wide range of complex consumer class action litigation, as well as general business litigation.

On the plaintiff's side, Rafey has been appointed lead counsel in numerous class actions, including landmark settlements involving the telecom industry worth hundreds of millions of dollars. Rafey has been appointed Class Counsel in nationwide class action settlements against the major wireless carriers, aggregators, and providers of "mobile content," including *Van Dyke v. Media Breakaway, LLC*, No. 08-cv-22131 (S.D. Fla.); *Parone v. m-Qube, Inc.*, No. 08 CH 15834 (Cir. Ct. Cook County, Ill.); *Williams v. Motricity, Inc.*, et al., No. 09 CH 19089 (Cir. Ct. Cook County, Ill.); and *Walker v. OpenMarket, Inc., et al.*, No. 08 CH 40592 (Cir. Ct. Cook County, Ill.).

On the business side, Rafey has counseled clients ranging from "emerging technology" companies, real estate developers, hotels, insurance companies, lenders, shareholders and

attorneys. He has successful litigated numerous multi-million dollar cases, including several "bet the company" cases.

Rafey has first chaired jury and bench trials, mediations, and national and international arbitrations.

Rafey received his J.D. from the DePaul University College of Law in 2005. While in law school, he received a certificate in international and comparative law. Rafey received his B.A. in History, with distinction, from the University of Colorado – Boulder in 2002.

**CHRISTOPHER L. DORE** is a Partner at Edelson and a member of the Technology and Fraudulent Marketing Group. Chris focuses his practice on emerging consumer technology issues, with his cases relating to online fraud, deceptive marketing, consumer privacy, negative option membership enrollment, and unsolicited text messaging. Chris is also a member of the firm's Incubation and Startup Development Group wherein he consults with emergent businesses.

Chris has been appointed class counsel in multiple class actions, including one of the largest text-spam settlements under the Telephone Consumer Protection Act, ground breaking issues in the mobile phone industry and fraudulent marketing, as well as consumer privacy. *See Pimental v. Google, Inc.*, No. 11-cv-02585 (N.D.Cal.); *Turner v. Storm8, LLC*, No. 09-cv-05234 (N.D. Cal.); *Standiford v Palm, Inc.*, No. 09-cv-05719-LHK (N.D. Cal.); and *Espinal v Burger King Corporation*, No. 09-cv-20982 (S.D. Fla.). In addition, Chris has achieved groundbreaking court decisions protecting consumer rights. Representative reported decisions include: *Claridge v. RockYou, Inc.*, 785 F. Supp. 2d 855 (N.D. Cal. 2011); *Kramer v. Autobytel, Inc.*, 759 F. Supp. 2d 1165 (N.D. Cal. 2010); and *Van Tassell v. United Marketing Group, LLC*, 795 F. Supp. 2d 770 (N.D. Ill. 2011). In total, his suits have resulted in hundreds of millions of dollars to consumers.

Prior to joining Edelson, Chris worked for two large defense firms in the areas of employment and products liability. Chris graduated *magna cum laude* from The John Marshall Law School, where he served as the Executive Lead Articles for the Law Review, as well as a team member for the D.M. Harish International Moot Court Competition in Mumbai, India. Chris has since returned to his alma mater to lecture on current issues in class action litigation and negations.

Before entering law school, Chris received his Masters degree in Legal Sociology, graduating magna cum laude from the International Institute for the Sociology of Law, located in Onati, Spain. Chris received his B.A. in Legal Sociology from the University of California, Santa Barbara.

**BENJAMIN H. RICHMAN** is a Partner at Edelson PC and is a member of the firm's Corporate Governance and Business Litigation Practice Group. He handles plaintiff's-side consumer class actions, focusing mainly on technology-related cases, represents corporate defendants in class actions, and handles general commercial litigation matters.

On the plaintiff's side, Ben has brought industry-changing lawsuits involving the marketing practices of the mobile industry, print and online direct advertisers, and Internet companies. He has successfully prosecuted cases involving privacy claims and the negligent storage of consumer data. His suits have also uncovered complex fraudulent methodologies of Web 2.0

companies, including the use of automated bots to distort the value of consumer goods and services. In total, his suits have resulted in hundreds of millions of dollars to consumers.

On the defense side, Ben has represented large institutional lenders in the defense of employment class actions. He also routinely represents technology companies in a wide variety of both class action defense and general commercial litigation matters.

Ben received his J.D. from The John Marshall Law School, where he was an Executive Editor of the Law Review and earned a Certificate in Trial Advocacy. While in law school, Ben served as a judicial extern to the Honorable John W. Darrah of the United States District Court for the Northern District of Illinois, in addition to acting as a teaching assistant for Prof. Rogelio Lasso in several torts courses. Ben has since returned to the classroom as a guest-lecturer on issues related to class actions, complex litigation and negotiation. He also lectures incoming law students on the core first year curriculums. Before entering law school, Ben graduated from Colorado State University with a B.S. in Psychology.

Ben is the director of EDELSON PC'S Summer Associate Program.

**ARI J. SCHARG** is a Partner at EDELSON PC. He handles technology-related class actions, focusing mainly on cases involving the unlawful geo-locational tracking of consumers through their mobile devices, the illegal collection, storage, and disclosure of personal information, fraudulent software products, data breaches, and text message spam. His settlements have resulted in tens of millions of dollars to consumers, as well as industry-changing injunctive relief. Ari has been appointed class counsel by state and federal courts in several nationwide class action settlements, including *Webb v. Cleverbridge*, No. 11-cv-4141 (N.D. Ill.); *Ledet v. Ascentive*, No. 11-cv-294 (E.D. Penn.); and *Drymon v. CyberDefender*, No. 11 CH 16779 (Cir. Ct. Cook Cnty., Ill.); and was appointed sole-lead class counsel in *Loewy v. Live Nation*, No. 11-cv-4872 (N.D. Ill.), where the court praised his work as "impressive" and noted that he "understand[s] what it means to be on a team that's working toward justice." Ari was selected as an Illinois Rising Star (2013) by Super Lawyers.

Prior to joining the firm, Ari worked as a litigation associate at a large Chicago firm, where he represented a wide range of clients including Fortune 500 companies and local municipalities. His work included representing the Cook County Sheriff's Office in several civil rights cases and he was part of the litigation team that forced Craigslist to remove its "Adult Services" section from its website.

Ari is very active in community groups and legal industry associations. He is a member of the Board of Directors of the Chicago Legal Clinic, an organization that provides legal services to low-income families in the Chicago area. Ari acts as Outreach Chair of the Young Adult Division of American Committee for the Shaare Zedek Medical Center in Jerusalem, and is actively involved with the Anti-Defamation League. He is also a member of the Standard Club Associates Committee.

Ari received his B.A. in Sociology from the University of Michigan – Ann Arbor and graduated magna cum laude from The John Marshall Law School where he served as a Staff Editor for The John Marshall Law Review and competed nationally in trial competitions. During law school, he

also served as a judicial extern to The Honorable Bruce W. Black of the U.S. Bankruptcy Court for the Northern District of Illinois.

**STEVEN LEZELL WOODROW** is a Partner and Chair of the firm's Banking and Financial Services Practice Group. Steven focuses his practice on complex national class actions against some of the Country's largest financial institutions. Representative matters include cases against national banks and mortgage servicers for improper loan modification practices, unlawful home equity line of credit ("HELOC") account suspensions and reductions, and claims regarding the misapplication of payments.

Steven delivered the winning oral argument in *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547 (7th Cir. 2012), the first federal appellate court decision to allow borrowers to challenge bank failures to follow the federal Home Affordable Modification Program ("HAMP") under state law.

Courts have also appointed Steven as class counsel in nationwide class action settlements against cellphone companies, aggregators, and mobile content providers related to unauthorized charges for ringtones and other mobile content, including *Paluzzi v. Cellco Partnership*, No. 08-cv-00405 (N.D. Ill.); *Williams v. Motricity, Inc*., No. 09 CH 19809 (Cir. Ct. Cook Cnty., Ill.); and *Walker v. OpenMarket Inc*., No. 08 CH 40592 (Cir. Ct. Cook Cnty., Ill.).

Steven has also served as an Adjunct Professor of Law at Chicago-Kent College of Law where he co-taught a seminar on class actions. Prior to joining the firm, he worked as a litigator at a Chicago boutique where he tried and arbitrated a range of consumer protection and real estate matters.

Steven received his J.D. High Honors, Order of the Coif, from Chicago-Kent College of Law in 2005. During law school, Mr. Woodrow served as a Notes and Comments Editor for The Chicago-Kent Law Review, competed on Moot Court, and served as President of the Student Bar Association. He additionally spent a semester as a judicial extern for the Honorable Ann C. Williams on the United States Court of Appeals for the Seventh Circuit. Steven received the ALI-ABA Scholarship and Leadership Award for best representing the combination of leadership and scholarship in his graduating class as well as the Lowell H. Jacobson Memorial Scholarship, which is awarded competitively each year to a student from one of the law schools in the Seventh Circuit to recognize personal commitment and achievement.

Steven is admitted to practice in Colorado (2011) and Illinois (2005).

Steven received his B.A. in Political Science with Distinction from the University of Michigan—Ann Arbor in 2002.

**COURTNEY BOOTH** is an Associate at EDELSON PC. Courtney focuses her practice on consumer class actions.

Courtney received her J.D., *magna cum laude*, from The John Marshall Law School. While in law school, she was a staff editor of The John Marshall Law Review, a teaching assistant for Legal Writing and Civil Procedure, and a member of the Moot Court Honor Society. Courtney represented John Marshall at the Mercer Legal Ethics and Professionalism Competition where

she was a semi-finalist and won Best Respondent's Brief and at the Cardozo/BMI Entertainment and Communications Law Competition where she placed in the top three oralists. Courtney was recently nominated as a 2013 Member of the National Order of Scribes.

Prior to law school, Courtney attended Saint Louis University where she earned a B.A. in Communication. While there, she was a community relations intern for the St. Louis Blues.

**MARK EISEN** is an Associate at EDELSON PC, where he focuses on consumer class actions. Prior to joining the firm, Mark clerked for the Honorable Gary Allen Feess, United States District Court for the Central District of California.

Mark received his J.D., *magna cum laude*, from the Boston University School of Law. While in law school, he won the Homer Albers Prize Moot Court Competition, represented BU on the National Moot Court team, and was a note development editor on the BU International Law Journal. Mark's academic note, *Who's Running This Place? A Comparative Look at the Political Appointment System in the United States and Britain, and What the United States Can Learn*, was published in the International Law Journal in the spring of 2012. Most importantly, Mark was active with the Boston University School of Law Softball Team.

Prior to law school, Mark attended the University of Southern California where he earned a B.A., *magna cum laude*, in Political Science and Economics. While there, Mark was a teaching assistant to Professor Dan Schnur. Mark also traveled the country as part of the advance team for John McCain's 2008 presidential campaign.

**CHANDLER GIVENS** is an Associate at EDELSON PC, where his practice focuses on technology and privacy class actions. His lawsuits have centered on fraudulent software development, unlawful tracking of consumers through mobile devices and computers, illegal data retention, and data breach litigation.

Chandler leads a group of researchers in investigating complex technological fraud and privacy related violations. His team's research has lead to cases that have helped cause significant reforms to the utility software industry and resulted in tens of millions of dollars to U.S. consumers. On the privacy litigation front, Chandler plays an instrumental role in applying new technologies to federal and state statutes. His briefing of these issues has helped produce seminal rulings under statutes like the Stored Communications Act and establish data breach jurisprudence favorable to consumers.

A frequent speaker on emerging law and technology issues, Chandler has presented to legal panels and state bar associations on topics ranging from data privacy and security to complex litigation and social media. He has been featured on syndicated radio, quoted in major publications such as Reuters and PCWorld, and been an invited cyberlaw guest lecturer at his alma mater.

Chandler graduated from the University of Pittsburgh School of Law where he was a research assistant for Cyberlaw Professor Dr. Kevin Ashley, and a judicial extern for the Honorable David S. Cercone of the United States District Court for the Western District of Pennsylvania. He graduated cum laude from Virginia Polytechnic Institute and State University, with a B.S. in

business information technology, with a focus on computer-based decision support systems. Chandler sits on the ABA committees for Information Security and e-Discovery.

Before joining the legal profession, Chandler worked as a systems analyst. He has also interned at the Virginia Attorney General's Office as well as the U.S. Department of Justice in Washington, D.C.

**ALICIA HWANG** is an Associate at EDELSON PC. Alicia practices in the area of consumer class action and general litigation.

Alicia received her J.D. from the Northwestern University School of Law in May 2012, where she was an articles editor for the Journal of Law and Social Policy. During law school, Alicia was a legal intern for the Chinese American Service League, served as president of the Asian Pacific American Law Student Association and the Student Animal Legal Defense Fund, and was Chair of the Student Services Committee. She also worked as a student in the Northwestern Entrepreneurship Law Clinic and Complex Civil Litigation and Investor Protection Clinic.

Prior to joining EDELSON PC, Alicia worked as an Executive Team Leader for the Target Corporation, as well as a public relations intern for a tourism-marketing agency in London.

Alicia graduated *magna cum laude* from the University of Southern California, earning her B.A. in Communication in 2007. She is a member of the Phi Beta Kappa honor society.

**NICK LARRY** is an Associate at EDELSON PC. Nick practices in the area of consumer class action and general litigation.

Nick received his J.D., *cum laude*, from Northwestern University School of Law, where he was a senior editor of the Northwestern University Journal of International Law and Business.

Nick attended Michigan State University, where he graduated with a B.A. in General Business Administration/Pre-law in 2008 and played on the school's rugby team.

**MEGAN LINDSEY** is an Associate at EDELSON PC. Megan practices in the area of consumer class action, focusing on complex class actions in the banking industry.

Prior to joining EDELSON PC, Megan worked for several years as a commercial loan underwriter and portfolio officer at Merrill Lynch, Pierce, Fenner & Smith. Megan also worked as an analyst in the troubled asset group at Bank of America, helping to monitor and restructure high-risk loans.

Megan received her J.D. from Chicago-Kent College of Law in May 2011. During law school Megan externed for the Honorable William Bauer in the United States Court of Appeals for the Seventh Circuit and served as Vice President-Evening Division of the Student Bar Association and Vice President of the Moot Court Honor Society. Megan also represented Chicago-Kent at the National First Amendment Moot Court Competition in Nashville, Tennessee and the National Cultural Heritage Law Moot Court Competition in Chicago, Illinois.

Megan graduated with High Honors from DePaul University in July 2005, earning her B.S. in Finance.

**DAVID I. MINDELL** is an Associate at EDELSON PC. David practices in the area of technology and privacy class actions.

David has worked on cases involving fraudulent software products, unlawful collection and retention of consumer data, and mobile-device privacy violations. David also serves as a business consultant to private companies at all stages of development, from start-up to exit.

Prior to joining EDELSON PC, David co-founded several technology companies that reached multi-million dollar valuations within 12 months of launch. David has advised or created strategic development and exit plans for a variety of other technology companies.

While in law school, David was a research assistant for University of Chicago Law School Kauffman and Bigelow Fellow, Matthew Tokson, and for the preeminent cyber-security professor, Hank Perritt at the Chicago-Kent College of Law. David's research included cyberattack and denial of service vulnerabilities of the Internet, intellectual property rights, and privacy issues.

David has given speeches related to his research to a wide-range of audiences.

**AMIR MISSAGHI** is an Associate at Edelson, where he focuses on technology and privacy class actions.

Amir received his J.D. from the Chicago-Kent College of Law, where he was a member of the Moot Court Honor Society and a teaching assistant in Property. Before law school, he attended the University of Minnesota, where he received his B.S. in Applied Economics. He then began working at a Fortune 50 company as a programmer and data analyst. During that time Amir started working on his graduate studies in Applied Economics where he focused on analyzing consumer choice in healthcare markets.

**JOHN OCHOA** is an associate at EDELSON PC, focusing his practice on protecting consumers with a special emphasis on plaintiffs' privacy class action litigation, including cases brought under the Telephone Consumer Protection Act. John prosecutes cases in both state and federal courts at the trial and appellate levels.

John has secured important court decisions protecting the rights of consumers, including *Elder v. Pacific Bell Telephone Co*, 205 Cal. App. 4th 841 (2012), where the California Court of Appeal held that consumers may pursue claims against telecommunications companies for placing unauthorized charges on consumers' telephone bills, a practice known as "cramming." John was also appointed class counsel in *Lee v. Stonebridge Life Insurance Co*, 289 F.R.D. 292 (N.D. Cal. 2013), a case where the defendants are alleged to have caused the transmission of unauthorized text messages to the cellular telephones of thousands of consumers.

He graduated *magna cum laude* from the John Marshall Law School in May 2010 and served as Managing Editor for the John Marshall Law Review. His student Comment, which examines bicycling and government tort immunity in Illinois, appears in Vol. 43, No. 1 of the John

Marshall Law Review. While in law school, John externed with Judge Thomas Hoffman at the Illinois Appellate Court, and competed in the ABA National Appellate Advocacy Competition.

John is active in the Illinois legal community, and serves as Co-Chair of the Membership Committee on the Young Professionals Board of Illinois Legal Aid Online (ILAO). ILAO is a non-profit organization committed to using technology to increase access to free and pro bono legal services for underserved communities throughout Illinois.

He received his B.A. with Honors in Political Science from the University of Iowa in 2004.

**ROGER PERLSTADT** is an Associate at EDELSON PC, where he concentrates on appellate and complex litigation advocacy. Roger graduated from the University of Chicago Law School, where he was a member of the University of Chicago Law Review. After law school, he served as a clerk to the Honorable Elaine E. Bucklo of the United States District Court for the Northern District of Illinois.

Prior to joining the firm, Roger spent several years at a litigation boutique in Chicago where his practice included employment and housing discrimination claims, constitutional litigation, and general commercial matters. In 2011, he was named a Rising Star by Illinois Super Lawyers Magazine.

Roger also spent time as a Visiting Assistant Professor at the University of Florida Law School where he taught Arbitration, Conflict of Laws, and Employment Discrimination, and has published articles on the Federal Arbitration Act in various law reviews.

**EVE-LYNN RAPP** is an Associate at EDELSON PC. Eve-Lynn focuses her practice in the areas of consumer and technology class action litigation.

Prior to joining EDELSON PC, Eve-Lynn was involved in numerous class action cases in the areas of consumer and securities fraud, debt collection abuses and public interest litigation. Eve-Lynn has substantial experience in both state and federal courts, including successfully briefing issues in both the United States and Illinois Supreme Courts.

Eve-Lynn received her J.D. from Loyola University of Chicago-School of Law, graduating cum laude, with a Certificate in Trial Advocacy. During law school, Eve-Lynn was an Associate Editor of Loyola's International Law Review and externed as a "711" at both the Cook County State's Attorney's Office and for Cook County Commissioner Larry Suffredin. Eve-Lynn also clerked for both civil and criminal judges (Honorable Yvonne Lewis and Plummer Lott) in the Supreme Court of New York.

Eve-Lynn graduated from the University of Colorado, Boulder, with distinction and Phi Beta Kappa honors, receiving a B.A. in Political Science.

**BEN THOMASSEN** is an Associate at EDELSON PC. At the firm, Ben's practice centers on the prosecution of class actions cases that address federally protected privacy rights and issues of consumer fraud—several of which have established industry-changing precedent. Among other high profile cases, Ben recently played key roles in delivering the winning oral argument before the United States Court of Appeals for the Eleventh Circuit in *Curry v. AvMed*, 693 F.3d 1317

(11th Cir. 2012) (a data breach case that has, following the Eleventh Circuit's decision, garnered national attention both within and without the legal profession) and securing certification of a massive consumer class in *Dunstan v. comScore*, No. 11 C 5807, 2013 WL 1339262 (N.D. Ill. Apr. 2, 2013) (estimated by several sources as the largest privacy case ever certified on an adversarial basis).

Ben received his J.D., *magna cum laude*, from Chicago-Kent College of Law, where he also earned his certificate in Litigation and Alternative Dispute Resolution and was named Order of the Coif. At Chicago-Kent, Ben was Vice President of the Moot Court Honor Society and earned (a currently unbroken firm record of) seven CALI awards for receiving the highest grade in Appellate Advocacy, Business Organizations, Conflict of Laws, Family Law, Personal Income Tax, Property, and Torts.

Before settling into his legal career, Ben worked in and around the Chicago and Washington, D.C. areas in a number of capacities, including stints as a website designer/developer, a regular contributor to a monthly Capitol Hill newspaper, and a film projectionist and media technician (with many years experience) for commercial theatres, museums, and educational institutions. Ben received his Bachelor of Arts, *summa cum laude*, from St. Mary's College of Maryland and his Master of Arts from the University of Chicago.

**JACK YAMIN** is an Associate at EDELSON PC, where he focuses on privacy and consumer class actions.

Jack graduated cum laude from Northwestern University's Accelerated (2-year) JD Program. While in law school, Jack was a member of the Center for Wrongful Convictions, where he worked on post-conviction cases in Illinois appellate courts. Jack also served as a judicial extern to the Honorable Marvin Aspen, a senior judge of the United States District Court for the Northern District of Illinois. Throughout law school, Jack was a member of the Center for Conflict Resolution, where he mediated cases in Illinois courts throughout Chicago.

Prior to joining the firm, Jack worked as a tax consultant for business owners throughout the country, representing clients before the Internal Revenue Service, negotiating installment agreements, and handling tax audits. Jack also spent some time working at a literary agency, helping writers publish novels and marketing their work. Jack graduated *summa cum laude* from Binghamton University, earning his B.A. in philosophy and English literature. He is a member of the Phi Beta Kappa honor society.