UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| YAZAN HUSSEIN, individually and on behalf of all others similarly situated,<br><br>      Plaintiff,<br><br>      v.<br><br>COINABUL, LLC, a Wyoming limited liability company, and JASON SHORE, an individual,<br><br>      Defendants. | No. 14 C 5735<br>Judge James B. Zagel |

## MEMORANDUM OPINION AND ORDER

In this putative class action, Plaintiff Yazan Hussein ("Plaintiff") alleges that Defendants Coinabul, LLC and Jason Shore (collectively "Defendants") defrauded consumers by accepting payments in the form of bitcoins—a new form of digital currency—while refusing to ship the gold or silver ordered by customers. This matter is now before the Court on Defendants' motion to dismiss under Rule 12(b)(3) on the basis that a purported forum selection clause requires that this action be brought in the state courts of Wyoming and, alternatively, on Defendants' motion to strike class action allegation for failure to meet the numerosity and typicality requirements of Rule 23. For the following reasons, I deny both motions.

### BACKGROUND

Coinabul offers a marketplace where individuals can exchange bitcoins for real gold or silver. Bitcoins are a form of digital currency that, unlike traditional currency, are not issued or regulated by any central authority or government. Instead, bitcoins are created by individuals through a complex computer program and then traded over the Internet. Consumers can purchase specific coins or metal bars from Coinabul by using the company's website.

1

Coinabul's website contains a collection of hyperlinks at the bottom of every page. One of these hyperlinks, "Terms of Service," points consumers to Coinabul's Terms of Service, which in part provide:

> Dispute Resolution
>
> It is our goal that all disputes can be resolved in a timely fashion. To that end, use of any Coinabul service requires that you agree to dispute resolution as outlined below:
>
> 1. Forum Selection: The State courts of Wyoming shall have jurisdiction in any disputes. Disputes must be resolved within those courts. By using any Coinabul service, you agree to waive any objection to the jurisdiction of those courts.
>
> 2. Governing law: This User Agreement shall be governed and interpreted in agreement with the laws of Wyoming.

Except for the presence of this hyperlink, Coinabul website users are never told that Coinabul's Terms of Service apply to their use of the Coinabul website. Visitors to the Coinabul website can, among other actions, (i) browse through the entire website, (ii) learn about the bitcoin-to-gold service, (iii) create an account, and (iv) place an order—all without ever viewing, or being told to view, Coinabul's Terms of Service.

Plaintiff is a Coinabul customer who alleges that he paid for, but did not receive, his Coinabul orders. Plaintiff claims to have placed three orders for gold in June 2013 and transferred 1,644.54 bitcoins to Defendants as payment. According to Plaintiff, the orders never shipped. Over the past year, Plaintiff repeatedly inquired about the status of his orders and demanded the return of his bitcoins. Plaintiff alleges that there are other customers who, like him, failed to receive goods purchased from Coinabul. Plaintiff brought the instant suit, on his own and on behalf of others like him, against Defendants on July 25, 2014.

## DISCUSSION

I. **Defendants' Motion to Dismiss**

As a threshold matter, Defendants' motion to dismiss—under Rule 12(b)(3) through enforcement of a forum selection clause—is procedurally defective. *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 134 S. Ct. 568, 580 (2013). As Plaintiff points out and Defendants concede, the appropriate way to enforce a forum selection clause pointing to a state forum is through the doctrine of *forum non conveniens*. *Id.* Despite this procedural flaw, however, Plaintiff recognized Defendants' error and used the proper standard in its response brief. Because the issue has been fully briefed, it is unnecessary to deny Defendants' motion on procedural grounds alone.

Forum selection clauses are "prima facie valid and should be enforced unless enforcement is shown by the resisting party to be unreasonable under the circumstances." *Bonny v. Society of Lloyd's*, 3 F.3d 156, 159 (7th Cir. 1993); *see also Roberts & Schaefer Co. v. Merit Contr.*, 99 F.3d 248, 252 (7th Cir. 1996) ("[A] forum selection clause is enforceable except in exceptional circumstances.")). This is true even if the contract was never negotiated and, in effect, was dictated by one party to the other party. *See Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 593-95 (1991).

Defendants' request for dismissal relies entirely on the forum selection clause contained in its Terms of Service. As discussed by both parties, these terms are offered in the form of a browsewrap agreement, where "notice on a website conditions use of the site upon compliance with certain terms or conditions, which may be included on the same page as the notice or accessible via a hyperlink." *Southwest Airlines v. BoardFirst, L.L.C.*, No. 3:06-CV-0891-B, 2007 U.S. Dist. LEXIS 96230, at *14 (N.D. Tex. Sept. 12, 2007). Browsewrap

agreements are distinguishable from clickwrap agreements, where a "webpage user manifests assent to the terms of a contract by clicking an 'accept' button in order to proceed." *Van Tassell v. United Mktg. Grp., LLC*, 795 F. Supp. 2d 770, 790 (N.D. Ill. 2011). Because "clickwrap agreements require affirmative action on the part of the user to manifest assent, courts regularly uphold their validity when challenged." *Id.* Browsewrap terms, on the other hand, do "not require the user to manifest assent to the terms and conditions expressly." *Id.* (citing *Southwest Airlines v. BoardFirst, L.L.C.,* 06–CV–0891–B, 2007 WL 4823761, at *4 (N.D. Tex. Sept. 12, 2007)). In order for a browsewrap agreement to be enforced, the user must have had actual or constructive knowledge of the website's terms and conditions. *Id*.

Whether Plaintiff had actual knowledge here is a question that can be disposed of rather quickly—Plaintiff alleges that he did not review or even know Coinabul's Terms of Service existed when he made his purchases through the Coinabul website and there is no evidence to the contrary. *See Be In, Inc. v. Google Inc.*, No. 12-CV-03373-LHK, 2013 WL 5568706, at *7 (N.D. Cal. Oct. 9, 2013) ("Most courts upholding the enforceability of browsewrap agreements have done so . . . where [a party's actual knowledge of them] was firmly established in the factual record.").

Without a showing of actual knowledge, "the validity of a browsewrap contract hinges on whether the website provided reasonable notice of the terms of the contract." *Id.* at 790–91 (internal citations omitted); *see also Liberty Syndicates at Lloyd's v. Walnut Advisory Corp.*, No. CIV.A. 09-1343, 2011 WL 5825777, at *4 (D.N.J. Nov. 16, 2011) ("[C]ourts have only enforced the forum selection clauses in browsewrap agreements when the specific[] surrounding agreement revealed either that the user knew or should have known about the existence of the terms and conditions that contained the forum selection clause[.]"). Constructive notice depends

4

on the design and content of the website itself. *See Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1177 (9th Cir. 2014).

Here, the hyperlink that directs users to Coinabul's Terms of Service is listed among ten other hyperlinks at the bottom of every page. Although the hyperlink's font is adequately contrasted by the color of its background, the hyperlink's location—buried at the bottom of the webpage—is, without some additional act of notification, insufficient for the purpose of providing reasonable notice. *See, e.g., Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 23 (2d Cir. 2002) (refusing to enforce terms of use that "would have become visible to plaintiffs only if they had scrolled down to the next screen"); *In re Zappos.com, Inc., Customer Data Sec. Breach Litig.*, 893 F. Supp. 2d 1058, 1064 (D. Nev. 2012) ("The Terms of Use is inconspicuous, buried in the middle to bottom of every Zappos.com webpage among many other links, and the website never directs a user to the Terms of Use."); *Van Tassell*, 795 F.Supp.2d at 792–93 (refusing to enforce arbitration clause in browsewrap agreement that was only noticeable after a "multi-step process" of clicking through non-obvious links); *Hines v. Overstock.com, Inc.*, 668 F.Supp. 2d 362, 367 (E.D.N.Y. 2009) (plaintiff "could not even see the link to [the terms and conditions] without scrolling down to the bottom of the screen—an action that was not required to effectuate her purchase").

Because the forum selection clause in question can only be found in Coinabul's Terms of Service and because these terms are hidden behind a hyperlink that is tucked away at the bottom of its website, Plaintiff lacked constructive notice of Coinabul's Terms of Service. Without actual or constructive notice, the browsewrap agreement that contains Coinabul's Terms of Service is unenforceable. Because Coinabul's forum selection provision is unenforceable, Defendants' motion for dismissal fails.

**II.	Defendants' Rule 23 Challenges**

Federal Rule of Civil Procedure 23(a) provides that a party seeking class certification must satisfy four prerequisites: (1) numerosity of plaintiffs, (2) common questions of law or fact predominate, (3) the named plaintiff's claims and defenses are typical, and (4) the named plaintiff can adequately protect the interests of the class. Failure to meet any of these four requirements precludes class certification. *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006). Additionally, plaintiffs must satisfy at least one provision of Rule 23(b).

Rule 23(c)(1)(A) further provides that "[a]t an early practicable time after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action." *See Machowicz v. Kaspersky Lab, Inc.*, No. 14 C 1394, 2014 WL 4683258, at *5 (N.D. Ill. Sept. 19, 2014). Although "[m]ost often it will not be 'practicable' for the court to do that at the pleading stage . . . sometimes the complaint will make it clear that class certification is inappropriate." *Hill v. Wells Fargo Bank, N.A.*, 946 F.Supp.2d 817, 829–33 (N.D.Ill. 2013) (Feinerman, J.) (citing *General Tel. Co. of Sw. v. Falcon,* 457 U.S. 147, 160 (1982)); *see also Kasalo v. Harris & Harris*, 656 F.3d 557, 563 (7th Cir. 2011) ("Consistent with [Rule 23(c)(1)(A)'s] language, a court may deny class certification even before the plaintiff files a motion requesting certification."). Accordingly, in limited situations, a court may determine that class certification is inappropriate even before the parties proceed to discovery. *See Bohn v. Boiron, Inc.,* No. 11 C 8704, 2013 WL 3975126, *5 (N.D.Ill. Aug. 1, 2013) (Durkin, J.).

Judges in this district have generally addressed class certification at the pleading stage only when the class allegations are "facially and inherently deficient." *See Machowicz v. Kaspersky Lab, Inc.*, No. 14 C 1394, 2014 WL 4683258, at *5 (N.D. Ill. Sept. 19, 2014) (Holderman, J.); *Buonomo v. Optimum Outcomes, Inc.*, No. 13 C 5274, 2014 WL 1013841, *2

(N.D.Ill. Mar. 17, 2014) (St. Eve, J.); *Wright v. Family Dollar, Inc.*, No. 10 C 4410, 2010 WL 4962838, *1 (N.D. Ill. Nov. 30, 2010) (Gettlemen, J.); *Muehlbauer v. General Motors Corp.*, 431 F.Supp.2d 847, 870 (N.D. Ill. 2006) (Moran, J.). If the decision requires discovery, a motion to strike the class allegations at the pleading stage is premature. *See Buonomo v. Optimum Outcomes, Inc.*, No. 13 C 5274, 2014 WL 1013841, at *2 (N.D. Ill. Mar. 17, 2014); *see also Boatwright v. Walgreen Co.*, No. 10 C 3902, 2011 WL 843898, *2 (N.D.Ill. Mar. 4, 2011) (Castillo, J.) ("Because a class determination decision generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action . . . a decision denying class status by striking class allegations at the pleading stage is inappropriate.")

Defendants first challenge the Complaint's class allegations relating to numerosity. "While there is no threshold or magic number at which joinder is impracticable, a class of more than 40 members is generally believed to be sufficiently numerous for Rule 23 purposes." *Schmidt v. Smith & Wollensky, LLC*, 268 F.R.D. 323, 326 (N.D. Ill. 2010) (citing *Ringswald v. County of DuPage,* 196 F.R.D. 509, 512 (N.D. Ill. 2000)). Further, "a plaintiff does not need to demonstrate the exact number of class members as long as a conclusion is apparent from good-faith estimates." *Id.* (citing *Barragan v. Evanger's Dog & Cat Food Co., Inc.,* 259 F.R.D. 330, 333 (N.D.Ill. 2009)). Courts rely on "common sense" to determine whether an estimate of class size is reasonable and estimates "may not be based on pure speculation." *Id.* (citing *Murray v. E*Trade Fin. Corp.,* 240 F.R.D. 392, 396 (N.D.Ill. 2006)).

In the Complaint, Plaintiff alleges as follows:

> The exact number of Class members is unknown to Plaintiff at this time, but Coinabul has received over a thousand orders, making joinder of each individual member impracticable. Ultimately, the Class members will be easily identified through Defendants' records.

7

Even if there is neither a one-to-one relationship between the number of orders received by Coinabul and the number of customers who placed these orders—which we know there is not—nor a one-to-one relationship between the number of customers who placed orders and the number of customers who failed to receive any goods—a fact which we don't know yet—it still seems very likely that the number of potential plaintiffs exceeds forty. This estimate relies on common sense and is not unreasonable. The only way to find out the true number is through discovery.

Defendants also challenge the Complaint's class allegations relating to typicality. Rule 23(a)(3) requires a plaintiff to establish that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." *See Muro v. Target Corp.*, 580 F.3d 485, 492 (7th Cir. 2009) (quoting *Williams v. Chartwell Fin. Servs., Ltd.*, 204 F.3d 748, 760 (7th Cir. 2000)). Generally, "[a] claim is typical if it 'arises from the same event or practice or course of conduct that gives rise to the claims of other class members and . . . [is] based on the same legal theory." *Oshana*, 472 F.3d at 514 (quoting *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992)). "Although '[t]he typicality requirement may be satisfied even if there are factual distinctions between the claims of the named plaintiffs and those of other class members,'" the named plaintiff's claims must share "the same essential characteristics as the claims of the class at large.'" *Muro*, 580 F.3d at 492 (quoting *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983)). Under the typicality analysis, "a plaintiff against whom the defendants have a defense not applicable to other members of the class is not a proper class representative." *Hardy v. City Optical Inc.,* 39 F.3d 765, 770 (7th Cir. 1994).

Defendants argue that the orders placed during the time period in question may significantly vary in size and that this variation will affect the claims and defenses available to

potential class members. This argument is premature. Without discovery, it is impossible to know whether the orders actually vary in size. Similar to the numerosity analysis above, discovery is necessary to determine whether Defendants have a valid objection.

Given the rigorous scrutiny that Rule 23 requires, it is too early to make a determination on class certification. I will revisit Defendants' existing and additional objections to Plaintiff's class allegations if and when they oppose Plaintiff's motion to certify the class.

## CONCLUSION

For the reasons stated above, Defendants' motion to dismiss and motion to strike the class action allegations are both denied.

ENTER:

James B. Zagel
United States District Judge

DATE: December 19, 2014