## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| YAZAN HUSSEIN, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Case No. 1:14-cv-05735 |
| COINABUL, LLC, a Wyoming limited liability Company, and JASON SHORE, an individual, | ) ) ) | Judge James B. Zagel Mag. Judge Maria Valdez JURY TRIAL DEMANDED |
| Defendants. | ) ) | |

## DEFENDANTS COINABUL, LLC AND JASON SHORE'S
## ANSWER TO PLAINTIFF'S CLASS ACTION COMPLAINT

NOW COME Defendants, COINABUL, LLC and JASON SHORE, by and through their

Attorneys, JOHNSON & BELL, LTD., and for their Answer to Plaintiff's Class Action

Complaint, state as follows:

### NATURE OF THE CASE

1.      Defendants run an online marketplace called "Coinabul" where consumers may

exchange "bitcoins" – a new form of digital currency – for physical denominations of silver or

gold.  Unfortunately, rather then delivering the metals promised to their customers, Defendants

chose to capitalize on the lack of effective regulatory oversight in this burgeoning industry, and

instead defrauded their customers out of millions of dollars worth of bitcoins.   To help

understand this scheme, a brief introduction to the Bitcoin marketplace follows.

**ANSWER:    Denied.**

2.      Bitcoin is a form of digital currency that was created in early 2009.   Unlike

traditional money, bitcoins aren't issued by a government and aren't regulated by any central

authority. Instead, bitcoins can be created by any person with specialized hardware and computer software and can be sold to other, used to purchase goods or services, or traded via online exchanges (like Coinabul).

**ANSWER:   Denied.**

3.      Founded in 2011 by Defendant Jason Shore, Defendant Coinabul claims to be the "World's first Bitcoin-to-Gold resource available to the Bitcoin marketplace."

**ANSWER:   Admitted.**

4.      Unfortunately, while Defendants continued to readily accept Bitcoin from consumers, Defendants stopped shipping the promised gold or silver in return.  As a result, Defendants unlawfully misappropriated millions of dollars worth of their customers' bitcoins. Accordingly, Plaintiff brings this class action complaint on behalf of himself and all other similarly situated individuals to seek (i) the return of their bitcoins and all other equitable relief necessary to stop Defendants' deceptive and unlawful conduct, or, in the alternative, (ii) monetary damages sufficient to remedy Defendants' flagrant breach of their customers contracts.

**ANSWER:   Denied.**

## PARTIES

5.      Plaintiff Yazan Hussein is a natural person and a citizen of the State of Illinois.

**ANSWER:   Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 5 of the Plaintiff's Complaint.**

6.      Defendant Coinabul, LLC is a limited liability company existing under the laws of the State of Wyoming with its principal place of business located at 1712 Pioneer Avenue, Cheyenne, Wyoming 82001.  On information and belief, Coinabul is actually operated from the

State of California, but is not registered to do business there. Coinabul conducts business throughout this District and the United States.

**ANSWER: Denied.**

7.    Defendant Jason Shore is a natural person and a resident of the State of California. Shore is the Chief Executive Officer of Coinabul and is aware of, participated in, and benefited from the fraudulent and other wrongful conduct described in this Complaint. Shore conducts business throughout this District and the United States.

**ANSWER: Denied.**

## JURISDICTION AND VENUE

8.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2), because (i) at least one member of the Class is a citizen of a different state than Defendants, (ii) the amount in controversy exceeds $5,000,000, exclusive of interest and costs, and (iii) none of the exceptions under that subsection apply to this action.

**ANSWER: Denied.**

9.    This Court has personal jurisdiction over Defendants because Defendants conduct business transactions in this State, committed a tortious act within this State, and acquired control of an asset that was present in this State when control was acquired.

**ANSWER: Denied.**

10.    Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the unlawful conduct alleged in the Complaint occurred in, was directed to, and/or emanated from this District.

**ANSWER: Denied.**

# FACTUAL ALLEGATIONS

## I.      An Overview of the Bitcoin Market.

11.      Introduced in early 2009, Bitcoin has quickly become a recognized form of digital currency.

**ANSWER:      Admitted.**

12.      Just like traditional currency (*e.g.*, Dollars, Euros, etc.), bitcoins can be used to acquire goods and services from any merchant that accepts them, or they can be traded for cash through a variety of private online exchanges.  However, that's where the similarities end.  For instance, with traditional currency, a government decides when to produce and distribute it. Bitcoin, on the other hand, is not issued or directly regulated by any central authority or government.  Instead, bitcoins are created by individuals through a complex computer program and then traded with other individuals via the Internet (typically, through private online exchanges).

**ANSWER:      Denied.**

## II.      Defendants' Bitcoins-to-Gold Marketplace.

13.      Defendants claim to have started the "first Bitcoin to Gold resource available to the Bitcoin marketplace" – where individuals can purportedly exchange their bitcoins for real gold or silver.  To that end, Coinabul boasts that it's the "only Bitcoin to Gold resource [individuals] should deal with" because it "spent months developing the legal foundation, financial backing, corporate status, and significant software development to make a system that works."  Coinabul even encourages potential customers to use its service to that they can "stor[e] their' savings in tangible, financially secure, metals instead of fickle digital [*i.e.*, Bitcoin] or paper options."

**ANSWER: Denied.**

14.     To trade bitcoins for gold or silver using Defendants' service, a consumer must visit their website (www.coinabul.com), search for specific coins or bars (such as American Gold Eagle coins and South African Gold Krugerrands), and then add the same to their "cart".

**ANSWER: Denied.**

15.     When the individual is ready to complete their order, they are directed to a page where they are presented with the total amount of bitcoins required to effectuate the exchange and are then instructed to transfer their bitcoins to Defendants' wallet. Unlike a traditional online credit card transaction, a Bitcoin transaction is final and cannot be reversed once it is made.

**ANSWER: Denied.**

16.     Defendants represent that once the necessary number of bitcoins are transferred to their wallet, customers can expect to receive the products they have ordered within four to seventeen business days.

**ANSWER: Denied.**

17.     Unfortunately for consumers, Defendants systematically fail to deliver on these promises.

**ANSWER: Denied.**

**III.     Defendants Suddenly Stop Shipping Their Customers' Orders.**

18.     Approximately two years after founding Coinabul, Defendants – without any warning at all – unexpectedly stopped shipping gold and silver to their customers.

**ANSWER: Denied.**

19.    Not surprisingly, this led to significant backlash from their customers and in March 2013, complaints started to surface on major online Bitcoin forums (such as biocointalk.org).  In response to several of the complaints on bitcointalk.org, a user named "Coinabul" – which, on information and belief, is an account created and used exclusively by Shore and others acting on Coinabul's behalf – apologized for "longer-than-usual-delays" in shipping customers' gold and silver, and blamed the problems on "chaotic markets."

**ANSWER:    Denied.**

20.    Over the next several months, Defendants issued additional ambiguous statements in an attempt to alleviate customer concern over the numerous unshipped orders.  For instance, on July 31, 2013, Shore sent an email to Coinabul customers claiming that he was unable to find a bank that would do business with him or Coinabul.  He acknowledged that the "situation is certainly dreary" and that customers had been "waiting on shipment[s] for weeks."  However, he claimed that "a large portion of outstanding orders have already gotten tracking numbers in the last couple of days" and that he and Coinabul were "shipping as much as [they could] in light of the circumstances."

**ANSWER:    Denied.**

21.    Even though Defendants suggested – both through their own website and on different online forums – that their bitcoins-for-gold business would continue, Defendants did not actually maintain their claimed inventory and, in early or mid 2013, began to stop shipping customers' orders.

**ANSWER:    Denied.**

22.    To make matters worse, during this time, Defendants *continued to accept Bitcoin* from customers in exchange for gold or silver, even while knowing that they would be unable to

ship the same. In fact, Defendants continued to accept Bitcoin for orders of precious metals until at least April 2014, even though they had stopped shipping orders completely in or around June 2013, had no metal in their inventory, and had no intention of fulfilling customer orders.

**ANSWER:** **Denied.**

IV. **Facts Relating to Plaintiff Yazan Hussein.**

23. In May 2013, Plaintiff Hussein visited Defendants' website – www.coinabul.com – and viewed their representations about the service, including its purported reliability and the relative ease in which consumers could turn bitcoins into gold using Coinabul.

**ANSWER:** **Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 23 of the Plaintiff's Complaint.**

24. Relying upon these presentations, Plaintiff used Coinabul on seven occasions between December 2012 and early June 2013 to exchange a total of about 1,400 bitcoins for gold coins and bars. In each case, Plaintiff received the gold within several weeks of placing his order.

**ANSWER:** **Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 24 of the Plaintiff's Complaint.**

25. Then, and still in reliance upon Defendants' website's representations, between June 22, 2013 and June 24, 2013, Plaintiff used Coinabul to place three additional orders for gold coins and bars. In total, Plaintiff transferred 1,644.54 bitcoins to Defendants' Bitcoin wallet. For its part, Coinabul promised to deliver gold coins and bars within four to seventeen business days.

**ANSWER:** **Denied.**

26. Unfortunately, Plaintiff did not receive any gold coins and bars in exchange for his 1,644.54 bitcoins in the promised time frame. As such, beginning in July and continuing through August 2013, Plaintiff began contacting Coinabul to inquire about the status of his orders. During this time period, Plaintiff sent approximately ten emails to Coinabul, Shore, and their other representatives requesting an update of the status of his orders. In response, Defendants and their representatives continued to inform Plaintiff that they were experiencing delays and assured him that his orders would be shipped promptly.

**ANSWER: Denied.**

27. Having not received any of his ordered gold after several months, Plaintiff contacted Coinabul on September 4, 2013 by email requesting the return of his bitcoins. Instead of honoring (or even acknowledging) his request, a Coinabul representative informed Plaintiff that Coinabul was unfortunately at "the mercy of the banks" and that they were "unable to ship any orders."

**ANSWER: Denied.**

28. In November 2013, Coinabul began requesting that Plaintiff provide it with additional personal information – including his legal name, Social Security Number, and a copy of an identification document such as a driver's license or a passport – before it could ship his orders, which it claimed was necessary to comply with federal anti-money laundering regulations. Plaintiff made several good faith attempts to provide the requested documents in December 2013 and again in April 2014.

**ANSWER: Denied.**

29. Over the next several months, Plaintiff continued to follow up with Coinabul about these issues, but to no avail. Not surprisingly, Coinabul's representatives continued to

provide Plaintiff with vague excuses for why his orders never shipped and, eventually, they stopped responding altogether.

**ANSWER: Denied.**

30.     Unfortunately, Plaintiff never received the gold that he ordered nor did he receive the requested return of the 1,644.54 bitcoins that he transferred to Defendants nearly one year ago.

**ANSWER: Denied.**

## CLASS ALLEGATIONS

31.     **Class Definition:** Plaintiff brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and (b)(3) on behalf of himself and a Class defined as follows:

> All persons in the United States who (1) placed an order for products on Coinabul's website; (2) transferred bitcoins to Defendants in exchange for those products; (3) did not receive the ordered products; and (4) were not refunded their transferred bitcoins.

Excluded from the Class are (1) Defendants, Defendants' agents, subsidiaries, parents, successors, predecessors, and any entity in which the Defendants or their parents have a controlling interest and their current and former employees, officers, and directors, (2) the Judge or Magistrate Judge to whom this case is assigned and the Judge's or Magistrate Judge's immediate family, (3) persons who execute and file a timely request for exclusion, (4) all persons who have previously had claims similar to those alleged herein finally adjudicated or who have released their claims against Defendants, and (5) the legal representatives, successors, or assigns of any such excluded person.

**ANSWER: Denied.**

32.     **Numerosity:** The exact number of Class members is unknown to Plaintiff at this time, but Coinabul has received over a thousand orders, making joinder of each individual member impracticable. Ultimately, the Class members will be easily identified through Defendants' records.

**ANSWER: Denied.**

33.     **Commonality and Predominance:** Common questions of law and fact exist as to all members of the Class and such questions predominate over questions affecting Plaintiff or individual members. Common questions for the Class include:

a.      whether Defendants' conduct described herein constitutes consumer fraud;

b.      whether agreements between Plaintiff and Class members on the one hand, and Defendants on the other should be rescinded;

c.      whether a constructive trust should be imposed on bitcoins that Defendants wrongfully possess;

d.      whether Defendants were unjustly enriched; and

e.      whether, alternatively, Defendants' conduct constitutes a breach of contract and whether Plaintiff and the Class suffered damages resulting from Defendants' breach.

**ANSWER:     Denied, sections (a)-(e) inclusive.**

34.     **Typicality:** Plaintiff's claims are typical of the claims of other members of the Class, in that Plaintiff and Class members sustained damages arising out of Defendants' uniform wrongful conduct.

**ANSWER:     Denied.**

35.   **Adequate Representation:**   Plaintiff will fairly and adequately protect the interests of the class, his claims are typical of the claims of the other members of the Class, and he has retained counsel competent and experienced in similar class action litigation.

**ANSWER:   Denied.**

36.   **Policies Generally Applicable to the Class:** This class action is appropriate for certification because Defendants have acted or refused to act on grounds generally applicable to the Class as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class, and making final injunctive relief appropriate with respect to the Class as a whole.  Defendants' policies challenged herein apply and affect members of the Class uniformly and Plaintiff's challenge of these policies hinges on Defendants' conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.  Specifically, the factual and legal bases of Defendants' liability to Plaintiff and to the other members of the Class are the same, resulting in injury to Plaintiff and to all of the other members of the Class.  Plaintiff and the members of the Class have suffered harm and damages as a result of Defendants' unlawful and wrongful conduct.

**ANSWER:   Denied.**

37.   **Superiority:** This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy because joinder of all parties is impracticable.  The damages suffered by many individual members of the Class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' action.  Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendants' misconduct.  Even if members of the Class could sustain such individual

litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economics of scale, and comprehensive supervision by a single Court. Economics of time, effort and expense will be fostered and uniformity of decisions ensured.

**ANSWER: Denied.**

38. Plaintiff reserves the right to revise the foregoing "Class Allegations" and "Class Definition" based on facts learned in discovery.

**ANSWER: Defendants make no response to paragraph 38, as it does not contain any allegations with regard to the Defendants. To the extent that paragraph 38 does set forth allegation(s) with regard to the Defendants, they are denied.**

### FIRST CAUSE OF ACTION
**Consumer Fraud**
**(On Behalf of the Plaintiff and the Class)**

39. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

**ANSWER: Defendants re-state and incorporate their answers to the foregoing allegations as though fully set forth herein.**

40. As described herein, Defendants have engaged in unlawful, deceptive, and unfair conduct by accepting bitcoins from Plaintiff and the Class and failing to provide any type of precious metal in return.

**ANSWER: Denied.**

41. Defendants advertised on their website that they would accept bitcoins in exchange for specific types of precious metals, such as gold coins and bars.

**ANSWER:    Admitted.**

42.    Defendants represented to consumers that the precious metals displayed on Coinabul's website were "in stock" and part of a readily available inventory, or that they were able to procure the metals. Speaking on behalf of Coinabul, Shore made public representations on the Internet that Coinabul could supply specific types of gold coins and bars in exchange for bitcoins.

**ANSWER:    Denied.**

43.    In reality, Defendants did not have the necessary precious metals in their inventory, did not have a reliable way to procure the precious metals, and did not intend to exchange the precious metals for bitcoins. Defendants knew that their representations to the contrary were false and were designed to mislead consumers.

**ANSWER:    Denied.**

44.    Defendants' false statements and other misrepresentations were part of a scheme intended to induce Plaintiff and Class members to transfer valuable bitcoins to Defendants.

**ANSWER:    Denied.**

45.    Plaintiff and Class members reasonably relied on Defendants' false statements in transferring bitcoins to Defendants in exchange for promised shipments of precious metals. If Plaintiff and Class members had known Defendants' representations were false, then they would not have made irrevocable transfers of bitcoins to Defendants.

**ANSWER:    Denied.**

46.     Following the receipt of bitcoins from Plaintiff and members of the Class, Defendants never shipped the promised metals, and likewise, did not return the exchanged bitcoins.

**ANSWER:   Denied.**

47.     Plaintiff and Class members were damaged in that they were and continue to be deprived of the value of bitcoins that they transferred to Defendants.

**ANSWER:   Denied.**

48.     Due to Defendants' deceptive conduct, any agreements between Defendants on the one hand, and Plaintiff or Class members on the other, should be rescinded.  As a result, Defendants should return all bitcoins that they received in exchange for products that they did not ship.

**ANSWER:   Denied.**

<u>**SECOND CAUSE OF ACTION**</u>
**Rescission**
**(On behalf of the Plaintiff and the Class)**

49.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

**ANSWER:   Defendants re-state and incorporate their answers to the foregoing allegations as though fully set forth herein.**

50.     Plaintiff and Class members entered into agreements with Defendants whereby Plaintiff and Class members agreed to transfer bitcoins to Defendants, and Defendants agreed to send precious metals to Plaintiff and Class Members.

**ANSWER:   Denied.**

51.     Plaintiff and Class members transferred the required number of bitcoins to Defendants, but Defendants did not send the precious metals.

**ANSWER: Denied.**

52. Defendants' failure to send the precious metals constitutes substantial nonperformance, since receiving the precious metals was the *only* reason that Plaintiff and Class members entered into the agreements.

**ANSWER: Denied.**

53. The parties here can be restored to the *status quo ante* if Defendants return the bitcoins that they accepted from Plaintiff and Class members in exchange for products Defendants never provided.

**ANSWER: Denied.**

54. Plaintiff asks that this Court grant rescission of the agreements between Plaintiff and Class members on the one hand, and Defendants on the other. Further, Plaintiff requests that the Court return the parties to the *status quo ante* by ordering the return of all bitcoins that Plaintiff and Class members transferred to Defendants in exchange for products that were never sent.

**ANSWER: Defendants deny that Plaintiff and/or the purported Class members are entitled to economic damages, or any other remedy.**

### THIRD CAUSE OF ACTION
**Unjust Enrichment**
**(On behalf of the Plaintiff and the Class)**

55. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

**ANSWER: Defendants re-state and incorporate their answers to the foregoing allegations as though fully set forth herein.**

56. Should the Court determine that the parties failed to enter into an enforceable agreement, or that the contract is otherwise void or should otherwise be considered rescinded

based upon fraud or complete nonperformance by Defendants, Plaintiff and the Class may be left without an adequate remedy at law.

**ANSWER: Defendants deny that Plaintiff and/or the purported Class members are entitled to economic damages, or any other remedy. Defendants make no answer to the remaining allegation(s) in paragraph 56 because they call for legal conclusions.**

57.    In accepting Defendants' offer to exchange bitcoins for precious metals, Plaintiff and Class members reasonably relied on Defendants' false statements about their inventory and about their intention to ship precious metals to consumers.

**ANSWER:    Denied.**

58.    Plaintiff and Class members, relying on Defendants' material misrepresentations of fact, conferred a monetary benefit on Defendants in the form of irrevocable transfers of bitcoins. But for those misrepresentations, Plaintiff and Class members would not have made the transfers.

**ANSWER:    Denied.**

59.    Defendants appreciate or have knowledge of the benefits conferred upon them by Plaintiff and the Class members.

**ANSWER:    Denied.**

60.    Under principles of equity and good conscience, Defendants should not be permitted to keep bitcoins belonging to Plaintiff and Class members when they only acquired those bitcoins through fraud, misrepresentation, and/or invalid contracts.

**ANSWER:    Denied.**

61.    Under principles of equity and good conscience, Defendants should not be permitted to benefit from the value of bitcoins – including any increase in value of those bitcoins

since their transfer – that they only received as a result of fraud, misrepresentation, and/or invalid contracts.

**ANSWER:    Denied.**

62.    Plaintiff respectfully requests that the Court order Defendants to return all bitcoins that they received in exchange for goods that it never provided or, in the alternative, disgorge all benefits gained from their possession of those bitcoins, including proceeds resulting from any sale of the bitcoins.

**ANSWER:    Denied.**

### FOURTH CAUSE OF ACTION
### Constructive Trust
### (On behalf of the Plaintiff and the Class)

63.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

**ANSWER:    Defendants re-state and incorporate their answers to the foregoing allegations as though fully set forth herein.**

64.    Plaintiff and the Class conferred a benefit on Defendants in the form of the bitcoins that Defendants received through Coinabul.

**ANSWER:    Denied.**

65.    Defendants appreciated or had knowledge of the benefits conferred upon them by Plaintiff and the Class.

**ANSWER:    Denied.**

66.    Beginning in early or mid 2013, and for the reasons discussed above, Defendants stopped mailing out metals in exchange for its customer bitcoins, but continued to accept bitcoin deposits (*i.e.*, given in exchange for the promised precious metals) through Coinabul.

**ANSWER:    Denied.**

67.     As a result, and with respect to Plaintiff's claims for equitable relief described herein, Plaintiff and the Class seek the imposition of a constructive trust on all of their bitcoins within Defendants' possession, custody, or control. Such bitcoins are the property of the members of the Class and they have an equitable interest in such property.

**ANSWER:   Defendants deny that Plaintiff and/or the purported Class members are entitled to economic damages, or any other remedy. Defendants make no answer to the remaining allegations in paragraph 67 because they call for legal conclusions.**

68.     Defendants unlawfully gained possession, custody or control of Plaintiff's and the Class's bitcoins and have denied Plaintiff and the members of the Class the ability to access their property.

**ANSWER:   Denied.**

69.     The imposition of a constructive trust on Plaintiff's and the Class's bitcoins is warranted given Defendants' unlawful conduct described above.

**ANSWER:   Denied.**

70.     Plaintiff and members of the Class have no other adequate remedy at law.

**ANSWER:   Defendants deny that Plaintiff and/or the purported Class members are entitled to economic damages, or any other remedy. Further, paragraph 70 calls for a legal conclusion.**

71.     Accordingly, Plaintiff seeks an order (i) imposing a constructive trust over the bitcoins currently held by Defendants and belonging to the Plaintiff and the members of the Class, (ii) appointing Defendants as trustee of the constructive trust for the sole purpose of returning the all of the members of the Class's bitcoins to the members of the Class, and (iii) awarding Plaintiff costs for the lawsuit.

**ANSWER:  Defendants deny that Plaintiff and/or the purported Class members are entitled to economic damages, or any other remedy.**

**FIFTH CAUSE OF ACTION**
**Breach of Contract**
**(In the alternative to Counts I-IV)**
**(On behalf of the Plaintiff and the Class)**

72.    Plaintiff incorporates the forgoing as if set forth herein, excluding paragraphs 39 through 71.

**ANSWER:  Defendants re-state and incorporate their answers to paragraphs 1-38 above, as though fully set forth herein.**

73.    Plaintiff and Class members entered into valid and enforceable agreements with Defendants whereby Defendants promised to ship precious metals to Plaintiff and Class members, and Plaintiff and Class members agreed to transfer bitcoins in exchange for those precious metals.

**ANSWER:  Denied.**

74.    Plaintiff and Class members sufficiently performed according to the contract by transferring bitcoins to Defendants.

**ANSWER:  Denied.**

75.    Defendants materially breached the contracts by failing to perform their contractual responsibility – shipping precious metals to Plaintiff and Class Members.

**ANSWER:  Denied.**

76.    As a result of Defendants' breach, Plaintiff and the Class have suffered actual harm, including economic injury in the amount and value of bitcoins unlawfully retained by

Defendants. Plaintiff and the Class therefore seek damages covering the losses directly and necessarily incurred as a result of Defendants' breach.

**ANSWER: Denied.**

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

This Court lacks subject matter jurisdiction over this case under 28 U.S.C. § 1332(d)(2), which sets forth the requirements for diversity jurisdiction in a class action case.

### SECOND AFFIRMATIVE DEFENSE

This Court lacks in personal jurisdiction over the Defendants under § 735 ILCS 5/2-209.

### THIRD AFFIRMATIVE DEFENSE

Plaintiff failed to perform conditions precedent under the contract upon which Plaintiff's Complaint is based. Specifically, Plaintiff failed to provide Defendants with sufficient materials as required by the Department of the Treasury, FinCEN, the Bank Secrecy Act, the USA PATRIOT Act and associated acts and regulations for financial institutions, anti-money laundering statutes and Defendants' own policies.

### FOURTH AFFIRMATIVE DEFENSE

Defendants' performance under the contract was frustrated and prevented because the payment processor being utilized by Coinabul at the time was required to relinquish the U.S. dollar balance associated with the three orders placed in Hussein's name to the United States government.

### FIFTH AFFIRMATIVE DEFENSE

Defendant Jay Shore asserts the defense of insufficiency service of process pursuant to Federal Rule of Civil Procedure 4(e).

## SIXTH AFFIRMATIVE DEFENSE

Defendants are immunized from the claims raised by the Plaintiff by the Bank Secrecy Act, 31 U.S.C. §5318, including the safe harbor provision set forth in 31 U.S.C. §5318(g).

## SEVENTH AFFIRMATIVE DEFENSE

Venue is improper under 28 U.S.C. § 1391(b), which requires that a substantial part of the events or omissions giving rise to the alleged unlawful conduct occurred in, was directed to and/or emanated from this District.

Defendants reserve the right to supplement these affirmative defenses as more information becomes available through the litigation in this matter.

## **JURY DEMAND**

Defendants demand a trial by jury.

Defendants deny that the Plaintiff and or the purported Class members are entitled to the relief sought, or to any relief whatsoever. Defendants pray that this Honorable Court will enter an order striking and dismissing the Plaintiff's Complaint with prejudice, awarding costs and fees to the Defendants and for any other relief that this Honorable Court deems equitable and just.

Respectfully submitted,

**JOHNSON & BELL, LTD.**

By: _/s/ Ann E. Zipfel_____
    One of the Attorneys for Defendants
    COINABUL, LLC and JASON SHORE

Joseph R. Marconi, ARDC #01760173
Frank P. Nowicki, ARDC #3125382
Ann E. Zipfel, ARDC #6297259
Johnson & Bell, Ltd.
33 West Monroe Street, Suite 2700
Chicago, Illinois 60603
(312) 372-0770
#3842537

## CERTIFICATE OF SERVICE

I hereby certify that on the 13th day of January, 2015, I electronically filed Defendant's Answer to Plaintiff's Class Action Complaint using the CM/ECF system, which will send notification of such filing to counsel of record:

Benjamin S. Thomassen
bthomassen@edelson.com
Rafey S. Balabanian
rbalabanian@edelson.com
Alicia E. Hwang
ahwang@edelson.com
David I. Mindell
dmindell@edelson.com
Edelson PC
350 N. LaSalle Street, Suite 1300
Chicago, IL 60654
T: 312-589-6370   F: 312-589-6378

By: /s/ Ann E. Zipfel
One of the Attorneys for Defendants
COINABUL, LLC and JASON SHORE